JAMES D. ARNOLD et al., Appellants, v. EDWARD N. CASON et al., Respondents.

St. Louis Court of Appeals, June 10, 1902.

1. **Materialman, Contract of: CONTRACTOR: VARIANCE IN ORDERS: ACCEPTANCE.** A materialman quoted to a prospective contractor a certain price upon a list of 'building materials, and the contractor later gave an order to the materialman for a list of lumber varying in description from the items specified in the first estimate without otherwise accepting its terms: *held,* that the giving of the order did not constitute an acceptance of the first proposal of the materialman.

2. **Contract: ACCEPTANCE OF OFFER.** The acceptance of an offer for a contract must be absolute and in exact accordance with the terms of the offer in order to bind the proposer.

3. ———: ———. An offer to sell articles at a given price may be withdrawn by so notifying the other party before the latter has accepted the offer.

4. ———: CONDUCT OF PARTY. A party to negotiations for a contract may signify his consent to a proposal by his conduct; but he can not hold the other party until he defines his position in some distinct way so as to create an obligation on his own part.

5. **Order to Furnish Materials: REASONABLE PRICE.** An order to furnish materials for a building, in the absence of any agreement

as to price, implies a promise to pay therefor the reasonable market value of the articles supplied in accordance with the order.

6. **Mechanic's Lien**: ACCOUNT: BURDEN OF PROOF: SPECIAL CONTRACT. In a mechanic's lien suit defendants admitted receiving the items of material in plaintiff's account, and the reasonable value thereof, but claimed that a special contract at a given price had been made for part of the materials: *held*, that the burden of proof was on defendants to establish the special contract.

7. **Practice, Appellate**: VERDICT: INFERENCE IN FAVOR OF RESPONDENT. On appeal, the party in whose favor a verdict has been rendered is entitled to the benefit of every reasonable inference of fact which the evidence warrants to support the verdict.

8. **Practice, Trial**: PRACTICE, APPELLATE: CONTRACT: FINDING OF COURT, WHEN SET ASIDE. Where plaintiff's cause of action on an account is admitted, except as to a part thereof claimed to be covered by a special contract, and there is a total failure of proof to establish the special contract, a finding that there was such a contract will be set aside as unsupported by the evidence.

9. ———: PRACTICE, TRIAL: EVIDENCE. On the trial of an action on an account a party was allowed to testify that he "relied" upon an estimate of the other party as a proposal for a contract; *held*, that said evidence was inadmissible.

Appeal from Lewis Circuit Court.—*Hon. Edwin R. McKee,* Judge.

REVERSED AND REMANDED.

*Blair & Marchand* for appellants.

There was no contract made, and there is a complete failure of proof to sustain defendants' allegations in their answer in regard thereto. Brewington v. Mesker, 51 Mo. App. 348; Robinson and Ferral v. Estes, 53 Mo. App. 582; Green v. Cole, 103 Mo. 70.

*Clay & Johnson* for respondent.

(1) A proposition or offer made on one side becomes a contract as soon as it is accepted on the

other side, and notice of such acceptance is given by words or other appropriate act, which binds the party accepting. Allen v. Chouteau, 102 Mo. 309; Lungstrass v. Ins. Co., 48 Mo. 201; Stotesburg v. Massengale, 13 Mo. App. 221; Egger v. Nesbitt, 122 Mo. 667. (2) If the party to whom a proposition is made accepts it within a reasonable time, it will then be binding as a contract. Cangas v. Mfg. Co., 37 Mo. App. 297. (3) A proposal may be revoked at any time before acceptance, but not afterwards. 3 Am. and Eng. Enc. of Law, p. 850. (4) Appellate courts will not disturb the verdicts of juries because they are against the weight and preponderance of the evidence. Honeycutt v. Railroad, 40 Mo. App. 674; Chadwick v. Bumpis, 45 Mo. 111; Garneau v. Herther, 15 Mo. 191; Brown v. Railroad, 50 Mo. 461; Craig v. Kelly, 49 Mo. App. 321. (5) Appellate courts have no constitutional power to pass on the weight of conflicting evidence. Blanton v. Dold, 109 Mo. 64. (6) Appellate courts can not assume that a verdict is the result of bias because opposed to the weight of the evidence. Brewing Ass'n v. Steimke, 68 Mo. App. 52. (7) In order to vacate a verdict on the ground that it is the evident result of prejudice or partiality, the testimony and surrounding circumstances must be such as to raise the strongest inference that such was the case. Jackson v. Railroad, 29 Mo. App. 495; Duggan v. Railroad, 46 Mo. App. 266.

BARCLAY, J.—This appeal is from a judgment in favor of plaintiffs for $70.83. Plaintiffs appeal, claiming that the judgment should have been for about one hundred dollars more.

Plaintiffs are a firm of lumber dealers as Arnold & Company, composed of Messrs. James D. Arnold and William L. Arnold, Jr. Defendants are Mr. Edward N. Cason and the Lewis County Exchange Bank. The action is to enforce a payment of a claim for lumber which plaintiffs furnished to defendant, Mr.

Cason, and which was used in the construction of a building owned by his co-defendant, the bank.

The demand of plaintiffs is presented under the mechanic's lien law and contemplates a judgment against the defendant, Mr. Cason, for the amount of his debt and for a lien against the real estate of the defendant bank upon which the improvement was made (R. S. 1899, sec. 4216).

The case was tried with the aid of a jury.

The petition is in the ordinary form of a claim for a mechanic's lien. It sets out the items of material for which plaintiffs ask judgment, and a number of credits about which there is no dispute. The account charges fourteen items of materials furnished on September 9, 1898, which form the focus of this litigation. The account also charges about thirty other similar items of various dates between September 21, 1898, and January 7, 1899, which need not be mentioned in detail.

The actual controversy lies within a narrow compass. It arises in relation to the items recited in plaintiff's petition as of date September 9, 1898. The particulars of these items have an important bearing on the result of this appeal. We insert them here as they appear in the petition:

September 9, 1898.

| | | | | | |
|---|---|---|---|---|---|
| To | 84 | 2x12 | 18 feet | White Pine | $43 85 |
| To | 62 | 2x14 | 20 feet | Yellow Pine | 43 39 |
| To | 24 | 2x14 | 18 feet | Yellow Pine | 15 74 |
| To | 40 | 2x8 | 18 feet | Yellow Pine | 14 40 |
| To | 40 | 2x8 | 20 feet | Yellow Pine | 16 00 |
| To | 80 | 2x10 | 20 feet | Yellow Pine | 40 00 |
| To | 40 | 2x6 | 12 feet | White Pine | 5 76 |
| To | 50 | 2x4 | 12 feet | White Pine | 4 80 |
| To | 175 | 2x4 | 10 feet | White Pine | 14 02 |
| To | 30 | 2x4 | 16 feet | White Pine | 3 84 |
| To | 150 | 2x4 | 8 feet | White Pine | 8 80 |
| To | 25 | 2x6 | 8 feet | White Pine | 2 40 |
| To | 4500 feet St. G. Y. P flooring | | | | 67 50 |
| To | 2300 feet fence flooring No. 2 | | | | 29 90 |

The answer of defendants admit the incorporation of the bank and that plaintiffs furnished defendant Cason the lumber and materials as set out in the petition, but it denies the indebtedness charged in so far as concerns the foregoing items only.

That part of the answer which relates to the gist of the controversy admits that the prices recited in plaintiffs' petition for the items which we have copied above are correctly stated at $308; but the answer then avers that plaintiffs contracted and agreed to furnish defendant Cason "on or about the —— day of September, A. D. 1898," the said lumber and materials mentioned and set out in the items of the petition quoted above, for the price and sum of $208.

Defendants further allege that Mr. Cason gave the order to plaintiffs for said items of lumber and materials relying upon said agreement of plaintiffs to furnish the same at the price of $208.

Defendant avers a tender of the amount due when plaintiffs' bill was rendered, with interest and costs, upon the basis of the account which they set up.

For reply plaintiffs denied the new matter in the answer.

The plaintiffs gave evidence tending to prove the account as set forth in their petition, and that the prices charged were the reasonable market value of the various items of materials supplied as described in the petition, at the dates when the deliveries occurred.

The defendants then took up their defense, the essence of which is that a special agreement was made by plaintiffs to furnish to Mr. Cason the group of items already cited as of September 9, 1898, for the sum of $208.

Mr. Cason testified that the defendant bank had issued proposals for bids for the construction of a bank building at Lewistown, Missouri. He desired to make a bid for the construction of the building. One of the plaintiffs, Mr. William L. Arnold, was a member

of the committee, representing the bank, having in charge the receiving of bids for that purpose, besides being a member of the plaintiff firm. The bids were to be considered, September 1, 1898. Before making his bid to the bank, defendant Cason requested of the same Mr. Arnold an estimate of price on certain lumber which Mr. Cason described in a written memorandum which he then produced, and which was read in evidence as "Exhibit F," as follows (including in the right-hand column, however, figures made by Mr. Arnold at that time, in response to Mr. Cason's request for the estimate of price):

"Estimate by Arnold & Co.,

| 84 | 2x12 | 18 | No. 1 R. G. H.................... | 3024 |
| 62 | 2x14 | 20 | No. 1 Yellow Pine.... ............ | 2893 |
| 24 | 2x14 | 18 | No. 1 Yellow Pine ......... ..... | 1008 |
| 80 | 2x8 | 18 | No. 1 Yellow Pine........ ........ | 2067 |
| 80 | 2x10 | 20 | No. 1 White Pine................ | 2667 |
| 40 | 2x6 | 12 | No. 1 White Pine............ .... | 480 |
| 50 | 2x4 | 12 | No. 1 White Pine ............... | 400 |
| 175 | 2x4 | 10 | No. 1 White Pine................ | 1167 |
| 30 | 2x4 | 16 | No. 1 White Pine............... . | 320 |
| 150 | 2x4 | 8 | No. 1 White Pine........8 00..... | 148 26 |

4500 feet St. Grain Y. P. flg.............. .. . ..
2300 feet No. 2 fence flg.........................$ 208 00

After Mr. Arnold had written the figures in the righthand column and the estimate of price at the bottom ($208) Mr. Cason took the paper and retained it.

The letting was not made on that day, but about four or five days thereafter the contract for the construction of the building was awarded to Mr. Cason. Without any other notice or expression of purpose on his part, Mr. Cason, on September 9, 1898, sent to plaintiffs an order for lumber as follows:

"Canton, Mo., September 9, 1898.
"Mr. J. D. Arnold & Co., Lewistown, Mo.
"Dear Sirs:   The list of lumber is as follows:

| | | | |
|---|---|---|---|
| 84 | 2x12 | 18 | No. 1 White Pine.................. |
| 62 | 2x14 | 20 | No. 1 Yellow Pine............ .... |
| 24 | 2x14 | 18 | No. 1 Yellow Pine.. ... .......... |
| 40 | 2x8 | 18 | No. 1 Yellow Pine................. |
| 40 | 2x8 | 20 | No. 1 Yellow Pine  .. ............ |
| 80 | 2x10 | 20 | No. 1 Yellow Pine .......... ..... |
| 40 | 2x6 | 12 | No. 1 White Pine edged ........... |
| 50 | 2x4 | 12 | No. 1 White Pine edged......... .. |
| 175 | 2x4 | 10 | No. 1 White Pine edged........... |
| 30 | 2x4 | 16 | No. 1 White Pine edged........... |
| 150 | 2x4 | 8 | No. 1 White Pine edged............ |
| 25 | 2x6 | 8 | No. 1 White Pine edged........... |

4500 feet St. Grain Y. P. flooring
2300 feet No. 2 fence flooring

"Yours truly,
"ED. N. CASON."

Plaintiffs furnished the lumber immediately in accordance with this order, which it will be noticed, is identical with the fourteen items of plaintiffs' account, but varies from the estimate, "Exhibit F."

The claim of defendants is that the estimate contained in the memorandum called "Exhibit F" was accepted by Cason's order last above quoted.

Mr. Cason's testimony is that when "Exhibit F" was handed to him, Mr. Arnold said that he would furnish that bill of items at the figures named.   Mr. Cason testified further that, after his bid for the construction of the bank building was accepted, he made the order for the lumber mentioned in "Exhibit F," by letter, September 9, 1898, the date of the first items in the account of plaintiffs.

The testimony given by Mr. William L. Arnold regarding the delivery of this estimate is, in effect, that

when he made the figures and delivered the paper to Mr. Cason he told him that it was "about what the lumber will cost" if he had "made no mistake." This was corroborated by another witness who was present.

Among other items of evidence submitted by defendants were two letters of plaintiff, William L. Arnold, to Mr. Cason, the first of which was dated, November 26, 1898, and the other, December 3, 1898. In those letters appear the following passages material to this controversy:

"As to the bill, the first time you were out you asked me to estimate on the lumber before you submitted a bid. I estimated the bill hurriedly and the paper I copied on and figured on was $308, instead of $208; I told you that was about what the bill would cost, and never heard from you any more until Frank came back from Quincy and said you intended to hold me to the prices I had given to you, but did not state the prices, and when you sent the bill up you did not state any price, so I supposed you expected to pay for the bill what I had estimated it and the paper I figured it on shows it $308."

"As you did not accept the offer I made you I will withdraw it and ask for settlement of the entire bill."

These letters were written and received after the delivery of the materials to defendant Cason.

When the time came for settling the accounts (in the latter part of January or early days of February, 1899) it developed that defendant, Mr. Cason, claimed that the first fourteen items (those of date September 9, 1898) of the account rendered by plaintiffs (except the items of "25 2x4 8 ft. W. P., 2.40," which he admitted was an "extra") were covered by a special contract between himself and plaintiffs, based upon the memorandum called "Exhibit F."

The trial turned on the validity of that contention. Plaintiffs' reply thereto was that no such contract had

been made; and that furthermore, the calculation of price contained in "Exhibit F" was the result of a mistake.

One further feature of the case should be mentioned, although it can scarcely be regarded as of much significance on this appeal.

The members of the committee representing the bank met Mr. Cason shortly after September 1, 1898, at Quincy, Illinois. While there it seems that Mr. Cason had an interview with Mr. Frank Arnold, brother of Mr. William Arnold. The former was there to represent his brother on the committee for the bank in reference to the letting of the bids for the construction of the proposed building. Mr. Frank Arnold was not a member of the plaintiff firm.

At the interview between the parties aforesaid, defendant Cason claims that he asked Mr. Frank Arnold if his brother William would stand by the figures which had been given to him, to which the former replied substantially that he knew nothing about the prices which had been given, but that his brother would "stick" to any prices he had given.

In the progress of the trial, during the examination of Mr. Cason, one of the defendants, after he had stated that the bill of items ("Exhibit F") had been handed to him by Mr. William Arnold and that he put it in his pocket, the court, against the objection and exception of plaintiffs, permitted the witness to state that he relied upon that paper as plaintiffs' estimate to furnish the materials mentioned in the bill.

This testimony was objected to by plaintiffs as being incompetent and as constituting no part of the contract.

The court gave two instructions, the first at the instance of the plaintiff and the second of its own motion as follows:

"1. If the jury shall believe from the greater weight of the evidence in the cause that William L.

Arnold, one of plaintiffs, furnished bill or estimate of lumber to defendant Cason mentioned in the evidence and priced or valued same $208 believing he had priced or valued said lumber at its market value; and shall further believe from the evidence that the market value thereof at the time was $308; and shall further believe that said Cason knew or had information sufficient to cause an ordinarily prudent man to believe a mistake in the price of said lumber had been made by said William L. Arnold, then and in that case the jury shall find for plaintiffs, and allow them against defendant Cason the full market value of the lumber furnished by plaintiffs to said Cason, less credit for payments thereon and returned lumber to-wit:

"Dec. 16, 1898, $176.30—lumber returned $22.57, with interest on the balance after allowing said credits at the rate of six per cent per annum from January 31, 1898, to present time.

"2. If you find defendant was not indebted to plaintiffs to exceed $65.83 on the thirty-first day of January, 1899, you will not compute or allow interest subsequent to that date."

The court furthermore refused another instruction asked by plaintiffs as follows:

"Although the jury shall believe from the evidence in the cause that Frank Arnold stated to defendant Cason in the presence of Thomas Graves, at the foot of Hampshire street in Quincy, Ill., that Willie (meaning one of the plaintiffs herein) would stand by his figures he gave to defendant Cason, yet the court instructs the jury said statement would not bind the plaintiffs and the jury will disregard same in making up their verdict in this case."

The jury returned a verdict for defendants, which, by consent (in view of the tender of defendants, which had been made good by deposit in court) was corrected so as to express a finding in plaintiffs' favor for the amount admitted by defendants to be due ($70.83) and

costs. Judgment was rendered accordingly, after which plaintiffs promptly moved for a new trial, assigning among other grounds, that the verdict was not warranted "or supported either by the law or the evidence," as well as the admission of incompetent and illegal evidence offered by the defendant Cason, and the refusal of plaintiffs' instruction.

Upon the denial of the motion for a new trial, the plaintiffs appealed in the regular way.

1. The most important assignment of error rests on the contention that there was a failure of proof to establish the contract alleged in the answer. It is argued that Messrs. Cason and Arnold did not agree upon the terms which defendants rely upon in their answer as a special contract to cover the items of September 9, 1898, in the account of plaintiffs.

The evidence of Mr. Cason on that point has been given with some particularity. It need not be repeated. These facts are conceded by his evidence:

Prior to Cason's bid for the construction of the building Mr. Wiliam L. Arnold furnished him an estimate of price upon the twelve items of building material shown by "Exhibit F." Mr. Cason does not claim that he agreed to buy the material at that time. He claims to have accepted the offer or proposal by his order of September 9, 1898, already quoted. That order was undoubtedly a request to plaintiffs to furnish the lumber mentioned in it. Did it amount to an acceptance of Mr. Arnold's proposal contained in "Exhibit F?" The order makes no allusion to the estimate. It omits one item therein (the fourth) viz.:

"80 2x8 18, No. 1 Y. P.............2067."

Instead of that item the order substitutes two items, viz.:

"40 2x8 18, No. 1 Yellow Pine...........

"40 2x8 20, No. 1 Yellow Pine..........."

The order, furthermore, contains one other item not mentioned in the original estimate, viz.:

"25 2x6 8, No. 1 White Pine edged........"

The last cited item is mingled with other items of the original estimate.

Plaintiffs furnished all the lumber mentioned in the order, and charged defendant, Mr. Cason, the market rates therefor. The answer openly admits that the rates charged are correct as stated, amounting to $308.00 (excluding the item of twenty-five pieces, which defendants conceded to be an "extra," outside the original estimate contained in "Exhibit F").

Mr. Cason does not claim to have indicated to Mr. Arnold his acceptance of the latter's original proposal, otherwise than by the order which he gave.

The question then is whether the facts tend to prove an acceptance in contemplation of law.

The Supreme Court of our State has expressed its view recently on the subject of acceptance of proposals like this, as follows:

"We regard the rule as well settled that the acceptance to close a contract on an offer must be absolute, unambiguous, and in exact accordance with the offer. It must not vary from the offer either by way of omission, addition or alteration. If it does, neither party is bound." Scott v. Davis, 141 Mo. 225.

The principle of this ruling is abundantly supported by authority, and particularly by Northam v. Gordon, 46 Cal. 582, and Sawyer v. Brossart, 67 Iowa 678, both of which cases illustrate the rigidity with which courts enforce the doctrine. It is really part of the elementary law of contract. Pollock, Contracts (4 Ed.), *p. 38.

If Mr. Cason intended his order of September 9, 1898, to be an acceptance of the estimate of Mr. Arnold contained in "Exhibit F," he was unfortunate in his mode of expressing that intent. The fourth and fifth items of his order are not mere subdivisions of the fourth item of the estimate. The latter item called for eighty pieces of lumber, eighteen feet in length,

whereas the fifth item of Mr. Cason's account required forty pieces to be twenty feet in length, and the fourth item thereof called for only forty pieces of eighteen feet in length.

By no mode of computation do the fourth and fifth items of Mr. Cason's order harmonize with the fourth item of Mr. Arnold's estimate. We assume that the right-hand column of figures in the estimate ("Exhibit F") indicates the number of feet, board measure, in the materials itemized. Opposite the fourth item of the estimate are the figures "2067," meaning 2067 feet (clearly an error). But those erroneous figures exceed the sum total of the fourth and fifth items of Mr. Cason's order, which in the aggregate amount to 2067 feet, as we figure them.

By no construction which occurs to us can Mr. Cason's order of September 9, 1898, be viewed as identical with the estimate contained in "Exhibit F," laying out of view, of course, the item of twenty-five pieces of Mr. Cason's order, admitted to be "extra."

In this state of the case, we think the attempt to connect Mr. Cason's order with the estimate as an acceptance thereof must fail on the evidence which is now before the court.

Mr. Cason's order, however, implied a promise upon his part to pay the reasonable market prices for the articles ordered, unless there was some special agreement (such as he claims in this case) in force to establish a different scale of prices. There is no proof that, even after the order of September ninth, Mr. Cason took any steps to indicate that he had given it in pursuance of the estimate by Mr. Arnold.

On the other side, it appears from evidence introduced by defendants that Mr. Arnold declared (by letter of December 3, 1898) that he withdrew his original offer, having explained the error of his first figures in an earlier letter of November 26, 1898, already mentioned in the statement of facts. That withdrawal

doubtless would be inoperative if the offer had been already accepted, but if the offer had not then been accepted, the withdrawal was surely efficient.

It is undoubted law that a party to negotiations for a contract may signify his consent to a proposal by conduct, as well as by a more definite form of expression of assent. Yet one who claims the benefit of a bargain must himself in some distinct manner define his position with sufficient clearness to create an obligation on his part toward the other party, where the proposal to sell is of the sort shown in the case at bar.

The principles of the English law of contract require that the minds of the parties meet in some definite way, so that both may be bound, before either may claim the benefit of a contractual relation between them in cases where the proposal is like the one here.

Where the plaintiff sues for the reasonable value of articles sold and delivered, and defendant, admitting the sale, answers that a special agreement for the price exists, the burden of proof is on defendant to establish that agreement.

In the case at bar, as now presented, we are bound, for the purpose of review, to accept as true the full force of all the testimony favorable to defendants in regard to the alleged special agreement, and to discard the claim of mistake in the estimate made by plaintiffs. Giving defendants the benefit of every reasonable inference of fact, as we should do, we consider that the testimony does not tend to show an absolute and complete acceptance by Mr. Cason of the terms proposed in the estimate called "Exhibit F." His order introduced a variation from the description of the lumber which plaintiffs had proposed to supply. It was not drawn in a form to express or to imply an acceptance of the proposal of the plaintiffs, and he does not claim that an acceptance was otherwise communicated to plaintiffs.

We have not overlooked the piece of testimony

whereby it appeared that Mr. Cason, after learning
that the contract to erect the bank building had been
awarded to him, told Mr. Jas. D. Arnold that he was
going to buy the lumber of William; to which James
answered, "all right." That. expression of Mr.
Cason's purpose was not intended by him as an ac-
ceptance of the terms of the estimate of Mr. William
L. Arnold. It was a statement of what he was going
to do. It was not a present acceptance of the offer.
Mr. James D. Arnold, although interested as a partner
in the firm of plaintiffs, took no active part in direct-
ing its affairs. He left the business management to
his brother, William, as Mr. Cason knew. Neither
party to that conversation considered Mr. Cason's re-
mark to mean an acceptance of William's estimate in
"Exhibit F." It was plainly not so intended. The
first clear move in the direction of an acceptance was
in Mr. Cason's order of September 9, 1898. That
move, however, was not of such a character as to
amount to an acceptance because the order varied from
the proposal in the particulars already shown.

The finding for defendants is without evidence to
support it, and the assignment of error to that effect
in the motion for new trial was valid and should have
been sustained.

2. Another assignment of error is founded on
the ruling of the court permitting defendant Cason as
a witness to state that he relied upon "Exhibit F" as
an estimate of the price at which the materials men-
tioned in that paper would be furnished to him.

We think the learned trial judge erred in per-
mitting that evidence to be given. What was Mr.
Cason's reliance in his own thought (unless expressed
to Mr. Arnold) was not a competent fact to be con-
sidered in determining whether or not a contract was
concluded between the parties. It is "a well-estab-
lished principle in English law that such obligations
are not to be created by or founded upon undisclosed

intentions." Keightley v. Durant (1901), A. C. 247. The same idea had been already put into equally forcible form in an opinion of this court in Easterly Co. v. Criswell, 58 Mo. App. (St. L.) 471.

Mr. Cason's "reliance," as it was termed, in this item of evidence, could only be significant as implying an intent on his part to accept the terms of the estimate if he secured the contract to build.

As the judgment must be reversed on the ground first discussed in this opinion, we need not make any extended comment on the admission of this evidence. We mention it merely as a suggestion which may be useful in event the cause should again come to trial.

3. The other claims of error may be avoided on a retrial.

On the record now before us the judgment should be reversed and the cause remanded for a new trial. *Bland, P. J.,* and *Goode, J.,* concur.