GAUS & SONS MANUFACTURING COMPANY, Respondent, v. CHICAGO LUMBER & COAL COMPANY, Appellant.

St. Louis Court of Appeals, December 12, 1905.

1. **CONTRACTS: Proposition and Acceptance.** An order for a quantity of merchandise and the acceptance of the order do not constitute a contract unless the acceptance is unequivocal and unconditional. If the acceptance imposes conditions not contemplated by the order, it is not a contract.

2. **JUSTICES OF THE PEACE: Pleading: Variance.** In an action begun before a justice of the peace on an alleged contract consisting of an order for a quantity of merchandise and an acceptance, where the order and the acceptance do not constitute a contract, but the allegations of the petition inferentially show that the acceptance was agreed to by the conduct of the parties, it was not error to overrule an objection to the admission of evidence in support of the petition.

3. **CONTRACT: Rescission.** Where two parties entered into a contract whereby one was to deliver to the other a certain quantity of lumber, with a provision that the contract should be de-

termined by sample cars of lumber first delivered, the rejection of the sample cars furnished by the purchaser was sufficient to authorize the seller to rescind the contract.

4. **APPELLATE PRACTICE: Finding Contrary to Facts.** Where the trial judge erroneously found an issue in favor of one party, although there was another ground, not considered by the trial judge, on which the issue might properly have been determined in the same way, the cause will be reversed and remanded.

Appeal from St. Louis City Circuit Court.—*Hon. Horatio D. Wood*, Judge.

REVERSED AND REMANDED IN PART AND AFFIRMED IN PART.

*Walter H. Saunders* for appellant.

Exhibits "A" and "B" do not make a contract, and consequently the objection to the introduction of any testimony made at the outset of the case, on the ground that there was no contract, should have been sustained. Exhibits "A" and "B" differ in a number of material particulars. The acceptance, therefore, did not correspond to the terms of the offer, and consequently there was no contract, because the minds of the parties never met. Strange v. Crowley, 91 Mo. 1. c. 295; Taylor v. Von Schraeder, 107 Mo. 206; Cangas v, Rumsey Mfg. Co., 37 Mo. App. 297; Egger v. Nesbitt, 122 Mo. 667; Falls Wire Mfg. Co., v. Broderick, 12 Mo. App. 378; Stotesburg v. Massengale, 13 Mo. App. 221; Bruner v. Wheaton, 46 Mo. 363; Shickle v. Chouteau Iron Co., 10 Mo. App. 241; Robertson v. Topley, 48 Mo. App. 239; Parson's Contracts (9 Ed.), pp. 511-518; Scott v. Davis, 141 Mo. 213; Arnold v. Cason, 95 Mo. App. 426. If there was a contract made by exhibits "A" and "B," as the court found, then the sample-car clause was also a portion of this contract, as the court found. Under the sample-car clause the appellant had the right to refuse to ship any more lumber because of the inspection made of the first five cars received by the respondent.

*Harlan, Jeffries & Wagner* and *Chase Morsey* for respondent.

BLAND, P. J.—This suit was commenced before a justice of the peace, in the city of St. Louis. From a judgment rendered by the justice, an appeal was taken to the circuit court. On a trial anew in the circuit court, the issues were submitted to the judge, sitting as a jury, who, after hearing the evidence, made special findings of the facts and found the issues for the plaintiff.

The petition or statement on which the cause was tried in both courts is as follows (omitting caption) :

"Plaintiff for cause of action states that both it and defendant are corporations duly authorized to do business and sue and be sued in the State of Missouri. That on December 5, 1900, plaintiff made its proposal in writing to defendant whereby it offered to purchase of defendant two hundred and fifty thousand feet of one-inch No. 2 yellow pine boards, the same to be six, eight, and twelve inch widths, it being provided that the six-inch widths should not exceed fifteen per cent, at the price of $11.15 per thousand feet f. o. b. cars Wiggins Ferry Company, North Market street, city of St. Louis; which said proposal is hereto attached and marked Exhibit 'A'; that defendant accepted said proposal on the sixth day of December, 1900, by its written acceptance of that date, which said acceptance is hereto filed and marked Exhibit 'B.'

"That in pursuance of said contract defendant made shipments and did furnish to plaintiff about thirty-five thousand one hundred and sixteen feet of said lumber, but the said defendant wholly disregarding its duty refused to make further deliveries though frequently requested to do so by the plaintiff; that after the execution of said contract the price of the kind of lumber mentioned in said contract advanced and plaintiff was compelled to supply its wants to go into market and buy said lumber

at the advanced price, and that by reason thereof and the breach of said contract on the part of defendant plaintiff has been damaged in the sum of $375.96.

"For another and further cause of action plaintiff states that there has been an open, running account between it and defendant since January, 1901, and that by reason of said account the defendant is indebted to plaintiff in the sum of $8.80, a copy of which said account is hereto attached and marked Exhibit 'C,' and made a part of this petition.

"Wherefore plaintiff prays judgment against defendant in the sum of $384.76, with interest thereon and costs."

Exhibits "A" and "B" referred to in the petition are as follows:

### EXHIBIT "A."

"Dec. 5, 1900.

"Chicago Lumber & Coal Co., City.

"Gentlemen: Please enter our order for 200 to 250 thousand feet of 1 inch No. 2 yellow pine boards, 6, 8, 10, 12 inch widths, the 6 inch not to run over 15 per cent, same to be shipped in as you may find it convenient, say one or two cars per week, at price $11.50 f. o. b. cars, Wiggins Ferry Company, N. Market street. Stock to be in the rough. Sample cars to decide this order.

"Yours very truly,
"J. H. A.            "HY. GAUS & SONS MFG. CO."

### EXHIBIT "B."

"St. Louis, Mo., Dec. 6, 1900.

"Our Order, D. 76.

"Your Order 22 to our Mr. Bright.

"From Hy. Gaus & Sons Mfg. Co.

"Ship to North Market street, via Wiggins Ferry, St. Louis, Mo.

"General Conditions: All agreements are contingent upon strikes, accidents, delays of carriers and other

delays unavoidable or beyond our control; it is also understood that this order is taken subject to and will be shipped according to grades and classifications of the Southern Lumber Manufacturers' Association, adopted January 18, 1899, and settlement on any other basis will not be entertained.

"Terms.—60 days net. Discount of 2 per cent cash will be allowed if remittances are received by us within 15 days from date of invoice. ·

"All discounts to apply on net invoice after freight has been deducted.

"Exchange.—All bills are payable in St. Louis, Chicago or New York exchange, and collection charges on local checks or drafts will be charged back to the drawer. Claims must be reported within five days from receipt of car to be considered.

"In making delivered prices we simply guarantee the cost of goods at your place, but are in no way responsible for their safe delivery.

"Pieces, 250,000 feet; size, 1 by 6, 8, 10 and 12 inches; length, amount of feet, 10 to 20; description, No. 2 boards rough; price, $11.50; not to be over 15 per cent of 6 inch. Ship at the rate of two or three cars per week.

"This order is accepted for prompt shipment. Inability to secure suitable cars will be the only cause for delay.

"CHICAGO LUMBER & COAL CO.

"Per. V. A. LONGAKER.

"Note.—The above is a copy of our entry of your order. Please compare carefully and advise us of any error or discrepancy existing."

Exhibit "C" is a running account showing a balance of $8.80 due and one of the items being, "To 1731 ft. of No. 2 Y. P. brds. returned, $11.50, $19.91."

It was admitted on the trial that plaintiff was entitled to judgment on the second count of the petition.

1. At the threshold of the trial of the case, defendant objected to the introduction of any evidence on the

ground that Exhibits "A" and "B" did not make out a contract. Considered separate and apart from the petition, these exhibits show that no contract, in fact, was made. Exhibit "A" is an order for from two hundred to two hundred and fifty thousand feet of one-inch No. 2 yellow pine lumber of various dimensions. Exhibit "B" is an acceptance of the order, qualified by a number of variances in respect to the grading and classification of the lumber, time and mode of payments and shipping, and makes the contract contingent upon strikes, accidents, etc. There are other variances from the order. It is the well settled law that to make a concluded contract the acceptance of an offer must be unequivocal, unconditional and without the least variance. [Bruner v. Wheaton, 46 Mo. 363; Strange v. Crowley, 91 Mo. 1. c. 295, 2 S. W. 421; Taylor v. Von Schraeder, 107 Mo. 206, 16 S. W. 675; Egger v. Nesbit, 122 Mo. 667, 27 S. W. 385; Scott v.Davis, 141 Mo. 1.c. 225, 42 S. W. 714; Arnold v. Cason, 95 Mo. App. 426, 69 S. W. 34; Robertson v. Tapley, 48 Mo. App. 239; Stotesburg v. Massengale, 13 Mo. App. 221.] But the petition alleges that in pursuance of the contract, the defendant furnished thirty-one thousand one hundred and sixty-one feet of the lumber and that plaintiff thereafter repeatedly requested the defendant to make further deliveries. The allegation of these facts shows that the plaintiff, by its conduct, accepted the terms of the contract as contained in Exhibit "B." That it might thus signify its acceptance is clearly the law. [Robinson v. City of St. Joseph, 97 Mo. App. loc. cit. 508, 71 S. W. 465; Arnold v. Cason, supra; 1 Beach on Contracts, sec. 34.] The acceptance by conduct is not alleged in the petition. Had the suit been commenced in the circuit court we think it should have been alleged to entitle the plaintiff to offer verbal proof of acceptance, but as the suit was begun before a justice of the peace, where no formal pleadings are required and as there are allegations in the petition showing, inferentially, that plaintiff, by its con-

duct, did accept the terms of the contract as set forth in Exhibit "B," we think the court did not err in overruling defendant's objection to the introduction of any evidence.

2. The plaintiff is a manufacturer of boxes. The defendant is a manufacturer of yellow pine lumber. Plaintiff ordered the lumber to use in its business. The evidence shows that defendant, on January 23, 1901, shipped two cars of lumber, one containing eleven thousand three hundred and eighty-one feet, the other ten thousand two hundred and ninety-eight feet, and on January twenty-fifth shipped two other cars, one containing nine thousand nine hundred and nine feet, and the other twelve thousand seven hundred and fifty-six feet, and on February fourth shipped one car containing twelve thousand two hundred and thirty-two feet. All of these cars were delivered in plaintiff's yard, four of them arriving on January twenty-ninth, the other one a few days later. Plaintiff was dissatisfied with the quality of the lumber and rejected, absolutely, the two cars shipped on January twenty-third, and also rejected seven thousand three hundred and nine feet of one of the cars shipped on January twenty-fifth and three thousand seven hundred and seventy-four feet of the other, and one thousand seven hundred and four feet of the car shipped on February fourth, and notified the defendant of its action. Defendant then had the lumber inspected by three inspectors, who graded all the lumber as "No. 2, Common." After this was done and after considerable negotiation, plaintiff finally accepted all the lumber contained in the three cars last shipped, except one thousand seven hundred and thirty-one feet. This one thousand seven hundred and thirty-one feet of lumber and that contained in the two rejected cars was sold by defendant as No. 2 common, to parties in St. Louis and East St. Louis who graded the lumber as No. 2 common. Defendant made no more shipments to plaintiff.

On April 11th, plaintiff wrote defendant as follows:

"April 11, 1901.

"Chicago Lumber & Coal Co., City.

"Gentlemen: Your Mr. Bright was here to-day and stated that the remainder of the two carloads of boards would be removed, also that you would send us a credit memorandum for the stock taken out of the three cars, and that you did not think you could furnish the remainder of the order. Now, we wish to state that we insist on you doing so, and as long as you send us *No. 2 boards* there will be no complaint; furthermore, please use your utmost efforts to give us some of these boards as soon as possible.

"Yours truly,

"J. H. A.                   "HY. GAUS & SONS MFG. CO."

To this letter defendant replied as follows:

"April 13, 1901.

"Hy. Gaus & Sons, St. Louis, Mo.

"Gentlemen: Your favor of the eleventh at hand and noted. Our Mr. Bright reported to us the conversation had with you in regard to stock, and we cannot but feel that it would be useless for us to ship you more material, as with stock in the present condition it is impossible for us to guarantee bright No. 2 common, in fact, No. 2 common is piled in the weather and is likely to be stained and weatherbeaten. The three parties whom we had examine the stock you refused to accept as No. 2 common, declared it to be No. 2, and it was sold as such. We judge from this that you require something special in No. 2 common, and it is out of the question for us to meet your requirements. We therefore think best to consider the order cancelled, and request you to supply your wants from some other source. If it was within the range of possibility for us to give you stock that would meet with your requirements, we would be only too willing to do so. We have held mills up from shipping any

further material until we get this question at issue between us settled.

"Yours very truly,
CHICAGO LUMBER & COAL CO.
"V. A. LONGAKER."

Plaintiff's evidence is that after the letter of April thirteenth, its officers took the matter up with Mr. Longaker over the telephone and Longaker stated he would take the matter up with the mill but failed to do so; that after consulting its attorney, in a conversation between Mr. Gaus and Mr. Bright (salesmen for defendant) Bright asked if plaintiff would abide by inspection rules of the Southern Lumber Manufacturers' Association. Gaus said he would on condition that defendant would start to ship, and Bright said Gaus should write the defendant, and Gaus then had the following letter written:

"April 25, 1901.
"Chicago Lumber & Coal Company, City.

"Gentlemen: As per the request of your Mr. Bright, we beg to say that whenever any question arises relative to the grade of a carload of No. 2 boards, the decision of the Association inspector shall be final in deciding the dispute, which will be satisfactory to us. We would also ask you to make a special effort to get up one or two cars of the No. 2 boards at once. For goodness sake, get the remainder of the two cars off of our lot, as we have cars laying on the track to put on this ground that your lumber is occupying, and oblige,

"Yours truly,
"HY. GAUS & SONS MFG. CO."

Plaintiff also offered evidence tending to show that to supply its wants it was compelled to go into the market, after defendant refused to ship any more lumber, and buy the same grade of lumber at a greater price than defendant contracted to furnish it.

N. W. McLeod and other experienced dealers in lumber, in respect to the custom of the yellow pine lumber trade, testified as follows:

"The custom is that where a buyer and seller make a contract for a certain number of feet of lumber, and the buyer wants to have a clause inserted that he will place this order in case it is satisfactory, sample car order, as it is termed, in case the lumber does not come up to the expectations of the buyer, the buyer has the right to cancel the balance of the order; and if the grading of the lumber is not satisfactory to the seller, he has the right to cancel. The right lies with both parties."

The following rules of the Association were read in evidence:

"No. 60.—No. 2 common boards, dressed one or two sides, and No. 2 common shiplap, may contain any number of sound knots, none of which are over four and one-half inches in diameter, or over one-third the width of the piece if located at the edge, or their equivalent spike knots, smaller or more defective knots, worm holes, one straight split one-fourth the length of the piece; a knothole one and one-half inches in diameter, or its equivalent in small knot-holes or rotten streaks, will be allowed, provided the piece is otherwise as good as No. 1 common, but must be free from through rotten streaks, through heart shakes over one-half the length of the piece, and wane over two inches wide exceeding one-half the length of the piece."

Latter part of rule 73.—"All rough lumber, if thicker than specified thickness for dry or green stock, may be dressed to such standard thickness, and when so dressed shall be considered as rough stock. When like grade on both faces is required, *special contract* must be made."

"No. 74.—Rough common boards and fencing must be well manufactured and should not be less than seven-eighths inch thick when dry."

"No. 76.—Rough dimension, if thicker than specified thickness for dry or green stock, may be dressed to

such standard thickness and when so dressed shall be considered as rough stock."

Defendant's evidence tends to show that the five cars were shipped as sample cars and that all the lumber shipped graded No. 2 common, under the rules of the Southern Lumber Manufacturers' Association. On the other hand, plaintiff's evidence tends to show that the lumber contained in the two rejected cars was only fit for kindling wood.

The finding of the facts so far as necessary to set them out in this opinion is as follows:

"The defendant undertook and agreed to ship 250,-000 feet of the kind of lumber described in the order at the price of $11.50 per 1000 feet f. o. b. cars Wiggins Ferry, to be shipped according to grades and classifications of the Southern Lumber Manufacturers' Association, sample cars to decide order.

"Under this contract the defendant shipped to plaintiff by invoice, dated January 23, 1901, car No. 3182, 11,381 feet, at $11.50, amounting to $130.88. Also on invoice of the same date, per car, No. 10929, it shipped 10,298 feet, at $11.50, amounting to $118.43. On January 25th, it shipped car No. 7410, containing 9,909 feet of lumber at $11.50, amounting to $125.45. And by invoice of the same date it shipped car No. 15229, containing 12,756 feet, at $11.50, amounting to $146.69. By invoice dated February 4th, it shipped car No. 20172, containing 13,232 feet, at $11.50, amounting to $152.17.

"These five cars comprised all the lumber shipped by the defendant under the order. The first two cars shipped under date of January 23d, to-wit, cars Nos. 3182 and 10929, were rejected by the plaintiff as not containing the kind of lumber called for by the contract, and the defendant received the lumber contained in these cars and disposed of it to other parties. The other three cars which were received here in this city prior to February 15th, with the exception of 1,731 feet, amounting to

$19.91, were accepted by the plaintiff as complying with the order.

"Under the contract the plaintff paid in advance the freight upon the five cars. This freight, with the $19.91 credit for 1,731 feet rejected, amounted to the sum of $433.11. Giving the defendant credit for the three cars of lumber accepted, to-wit, car 7410, $125.45; car 15229, $146.69, and car 20172, $152.17, there is a balance due the plaintiff from the defendant of $8.80, which is the amount sued for in the second count of the petition. Concerning this amount, it was stipulated and agreed between the parties that the defendant owes the plaintiff $8.80, and on the fifteenth day of January, 1902, the defendant tendered in legal tender to the plaintiff $8.80 and $13.75 costs, being the amount of costs accrued up to said date, making a total of $22.55. And it was further agreed that said sum need not be paid into court, as the tender was refused, and that said tender should be regarded as a full legal and valid tender.

"Considerable testimony was introduced by the defendant as to meaning of the words 'sample cars to decide order,' taken in connection with the custom of the trade, and testimony was introduced tending to show that where these words were used in a contract, by a universal custom of the trade, the buyer, if the cars do not come up to the specifications of the contract, may cancel it; and that the seller, if the buyer rejects the sample cars, also has a right to cancel the contract. But whatever may be the meaning of this custom in the trade, the evidence does not show that the defendant, the seller in this case, relied upon this custom in rescinding the contract. The two cars shipped as per invoice of January 23d, presumably as sample cars, were entirely rejected by the plaintiff, but no rescission of the contract was predicated upon this rejection. Nor does the evidence show, in point of fact, that any sample cars whatever were shipped to the plaintiff. As to the first two cars, the defendant endeavored to induce the plaintiff to ac-

cept them, and upon its refusal to accept them the lumber was sold to other parties. Instead of cancelling the contract, by a letter dated February 20th, defendant wrote: 'We understand from our "A" Dep't that you have made complaint on the various shipments we have made you. Will you kindly furnish us a written statement of what shipments have been rejected and what proposition of settlement you have to make us. . . . Yours very truly, Chicago Lumber & Coal Co.'

"On April 13th the defendant wrote the plaintiff the letter quoted.

"This letter does not appear to be a rescission of the contract, but is more in the nature of an objection to the strictness of the inspection of the lumber shipped by the plaintiff. It is true that the letter concludes: 'We have held mills up from shipping any further material until we get this question at issue between us settled.'

"After the difficulty which the parties had growing out of the shipment of the five cars on March 9, 1901, the plaintiff wrote to the defendant the following letter: 'Gentlemen: We would like to know if you haven't got some of the 6 to 12 inch No. 2 boards started up for us. You will oblige us by getting us a few cars, at any rate.'

"The plaintiff continually insisted upon the delivery of the balance of the order, and on or about April 26th there was a meeting of the parties. Mr. Bright, the sales agent, was present, as also were Messrs. Gaus and Ahrens. At this interview Mr. Bright said that the plaintiff was too particular; and Mr. Ahrens answered that he did not think so. According to the testimony, Mr. Bright then asked if the plaintiff would be satisfied with the inspection of the inspectors of the Southern Lumber Manufacturers' Association, if there was any question about any future cars. Mr. Ahrens, representing the plaintiff, said to him, 'Why, certainly we would.' And Mr. Bright then said, 'On these conditions we will start to ship,' and further stated, 'to make it satisfactory

to both sides, you [meaning plaintiff] write us a letter.'
Mr. Ahrens testified that in accordance with this sug-
gestion he wrote him a letter the same evening (the let-
ter quoted on page 122).

"The two cars referred to in this letter as being in
the way of the plaintiff were the two cars which the
plaintiff had rejected, and which the defendant sold to
other parties.

"Notwithstanding the understanding which was en-
tered into as to future shipments, to-wit, that the decis-
ion of the inspector of the Southern Lumber Manufac-
turers' Association should govern, if any difficulty arose
as to future shipments, defendant declined to ship any
further lumber under the contract, and none was ship-
ped.

"The three cars which the plaintiff received under
this order contained 35,166 feet of lumber, leaving a de-
ficit of 214,834 feet, which the defendant failed and re-
fused to ship to plaintiff, and the plaintiff was obliged
to purchase from time to time other lumber of the same
kind to make good the deficiency.

"The prevailing market price in the city of St. Louis
of the kind of lumber called for by the contract was from
$13.25 to $13.50 per 1,000 feet, and the court finds that
the difference between the contract price and the market
price at which the plaintiff purchased at the time the de-
fendant refused to ship any further lumber was $1.75
per 1,000 feet.

"As a conclusion of law the court finds that the
plaintiff is entitled to recover upon the first count in its
petition the sum of $375.96, with interest from January
14, 1902, at the rate of six per cent per annum; and up-
on the second count in its petition it is entitled to re-
cover the sum of $8.80, with interest from January 14,
1902, at the rate of six per cent per annum, making the
aggregate amount of its recovery $384.76, with interest
from January 14, 1902, at the rate of six per cent per
annum.

"In this case the defendant, after asking the court to make a finding of facts, offered fifteen instructions based upon the testimony in the case. These instructions are all refused, on the ground of multiplicity. Instructions numbered 1, 2 and 3 offered by plaintiff are refused, and instruction No. 4 is given.

"Let judgment be entered in favor of plaintiff for the sum of $384.76, with interest at the rate of six per cent per annum from January 14, 1902, to date (April 6, 1903) amounting to $28.40, or a total of $413.16.

"HORATIO D. WOOD, Circuit Judge."

The order and acceptance referred to in the first paragraph of the finding quoted are to Exhibits "A" and "B." We think the learned trial judge committed palpable error in his finding of the facts. Exhibits "A" and "B," as we have seen, do not constitute a contract, and the learned judge did not find from the facts in the case that the terms contained in Exhibit "B" were offered and accepted by plaintiff by any conduct on its part. Whether or not there was a contract entered into between the parties is a question of fact to be ascertained one way or the other from the acts and conduct of plaintiff after it received Exhibit "B." This question has not been answered by the trier of the facts, the only authorized authority under the law to make the answer. The learned trial judge is also in error in finding that the defendant did not rescind the contract by its letter of April 13, 1901. The following clauses in the letter seem to have been entirely overlooked by the learned judge at the time he was making up his finding of the facts, to-wit:

"The three parties whom we had examine the stock you refused to accept as No. 2 common, declared it to be No. 2, and it was sold as such. We judge from this that you require something special in No. 2 common, and it is out of the question for us to meet your requirements. We therefore think best to consider the order cancelled, and request you to supply your wants from

some other source. If it was within the range of possibility for us to give you stock that would meet with your requirements, we would be only too willing to do so."

Here is an express declaration that as plaintiff had rejected two cars (the two found by the judge to have been shipped as sample cars) on the alleged ground that they did not contain No. 2 common lumber when, in fact, as claimed by defendant, the lumber graded No. 2 common, defendant, by reason of plaintiff's rejection of these two cars and its action with respect to the grade of the other three cars, "judged" plaintiff wanted something special in No. 2 common, which the defendant could not furnish, and hence thought it best to cancel the contract and advised the plaintiff to look elsewhere for its lumber. Now, according to the findings of the judge and according to the terms of the contract itself, the sample cars were to determine the contract. According to the finding of the facts by the court, the plaintiff rejected the sample cars, and it is of no significance that three other cars were shipped, for the reason they were shipped and switched into plaintiff's yards before the first shipment of sample cars was inspected and rejected. On the rejection of the two sample cars, defendant might have immediately exercised its right to terminate the contract. Defendant, however, proceeded cautiously and had all the lumber inspected by three expert inspectors before exercising its right. The evidence warrants the finding that after the contract was rescinded the matter was taken up by plaintiff and defendant and that defendant's Mr. Bright said if the plaintiff would agree to inspection by the inspectors of the Southern Lumber Manufacturers' Association the defendant would start to shipping and that Gaus had a letter written on the basis of this statement. This evidence and finding shows nothing more than that it was agreed between Gaus and Bright, respectively representing plaintiff and defendant, that the contract should be re-

115 app—9

instated or renewed upon the exact terms of the one theretofore cancelled or, to state it in another form, that a new contract was made upon the same terms and conditions as the original one. The suit was not on the new contract and for this reason this evidence and finding cuts no figure whatever in the case. For the reason that no fact or facts were found by the learned trial judge from which the court could have found that the contract sued on was ever agreed to by both parties to the suit, the judgment on the first count of the petition is reversed and the cause as to said count is remanded.

The judgment on the second count is affirmed. All concur.