## HOUSTON & BRAZOS VALLEY RAILROAD COMPANY, Respondent, v. JOSEPH JOSEPH & BROTHERS COMPANY, Appellant.

St. Louis Court of Appeals, December 14, 1912.

1. **CONTRACTS: Offer by Letter or Telegram: Acceptance.** Where a party proposes by a letter or telegram to bind himself by contract and states the subject-matter and terms of the contract, the party to whom the proposition is made must, within a reasonable time, unconditionally accept the proposition as made, and if the acceptance differ, in any material way, from the original proposition, it amounts to a rejection of the offer.

2. **SALES: Conditional Acceptance of Offer: Contracts.** Where, after preliminary negotiations for the sale of rails and angle bars, the seller offered by telegram to sell about 1000 tons at $20, and the buyer by telegram accepted the offer "subject to inspection," and the seller then wired the buyer that he would accept his price for 1000 tons, and stated that he was "mailing contract 500 tons shipment 30 days and 500 tons shipment 60 days," there was no contract to sell, since the

Railroad v. Joseph & Bros. Co.

buyer's telegram introduced a new condition as to inspection, and the seller's second telegram added new terms concerning the time of shipment and the reduction of the contract to writing.

3. ————: **Time of Delivery.** Where a contract is made for the sale of 1000 tons of rails and the time of delivery is not agreed upon, the law will imply that delivery of the entire quantity sold is to be made within a reasonable time after the sale.

4. ————: **Conditional Acceptance of Offer: Contracts.** Where a seller's telegram, purporting to accept a buyer's proposal, suggests that a written contract is being mailed, the seller's acceptance is qualified by the contract prepared and forwarded, and until it is executed there is no contract between the parties.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Williams,* Judge.

REVERSED.

*Lyon & Swarts* and *Dwight D. Currie* for appellant.

(1) Judgment should have been for the defendant because there was no contract entered into between the plaintiff and defendant. The correspondence between them did not constitute a contract because there was never a meeting of the minds on the same thing in the same sense. Runyon v. Wilkinson Gaddis & Co., 57 N. J. L. 420; Sarrons v. Richards, 151 Mo. App. 656; Bailey v. Smith & Moorhead, 122 Mo. App. 268; Gaus & Sons Mfg. Co. v. Lumber Co., 115 Mo. App. 114; Denton v. McInnis, 85 Mo. App. 542; Mill Co. v. Craven, 76 Mo. App. 458; James & Sons v. Fruit & Jar Bottle Co., 69 Mo. App. 207; McLean v. Gymnasium Co., 64 Mo. App. 55; Rudolph v. Frick, 57 Mo. App. 400; Duke v. Compton, 49 Mo. App. 304; Robertson v. Tapley, 48 Mo. App. 239; Tufts v. Sams & Son, 47 Mo. App. 487; Cangas v. Rumsey Mfg. Co., 37 Mo.

App. 297; Breitheisen v. Coffey, 15 Mo. App. 80; Wire
Mfg. Co. v. Broderick, 12 Mo. App. 378; Methudy v.
Ross, 10 Mo. App. 101; Bourne v. Shapleigh, 9 Mo.
App. 64; Scott v. Davis, 141 Mo. 225; Egger v. Nesbitt,
122 Mo. 667; Strange v. Crowley, 103 Mo. 287; Bruner
v. Wheaton, 46 Mo. 363; Reigart v. Coal & Coke Co.,
217 Mo. 142; Sparks v. Pittsburgh Co., 159 Pa. St. 295;
9 Cyc. 267 and 280, 281; Winn v. Bull, 7 Ch. D. 29;
Honeyman v. Marryatt, 7 H. L. Cas. 112; Mundy v.
Matthews, 34 Hun, 74; Babcock v. Ormsby, 18 S. D.
358; Water Commissioners v. Brown, 32 N. J. L. 504;
Glass Works v. Barnes & Co., 86 Hun, 374; Hutcheson
v. Blakeman, 60 Ky. 80, 3 Metc. 80; Brown v. Railroad,
44 N. Y. 79; Marshall v. Vineyard Co., 28 N. Y. Supp.
62; Brauer v. Oceanic Nav. Co., 70 N. E. 863; Lyman
v. Robinson, 14 Allen, 242; Lithographing Co. v. Ran-
dall, 73 Fed. 619; Robinson v. Weller, 81 Ga. 704;
Bishop on Contracts (2 Ed.), sec. 323.

*Robert C. Powell* for respondent.

(1)   A contract is a meeting of minds of the par-
ties shown by concomitant circumstances. Corre-
spondence and telegrams may constitute a valid con-
tract when an offer and acceptance is shown. No for-
mally drawn contract is necessary. It is the assent of
the parties which gives the contract its binding force
and an acceptance is not made conditional by adding
words, which in truth make no difference and are im-
material, all facts considered. Oliver v. Beaumont, 1
De G. & S. 397; James v. Jenkins, 8 Ch. D. 70; Clark v.
Dales, 20 Barb. 42; Brisban v. Boyd, 4 Paige, 17; Ab-
bott v. Shepard, 48 N. H. 14; Hart v. Bray,
50 Ala. 446; Smith v. Colby, 136 Mass. 562; Vassar v.
Camp, 11 N. Y. 441; Thevor v. Wood, 36 N. Y. 307;
Dana v. Short, 81 Ill. 468; Thames L. & T.
Co. v. Beville, 100 Ind. 309; Blaney v. Hoke, 14 O.
St. 292; Highland v. Rhoades, 26 O. St. 411; Cheney
v. E. Tp. Line, 59 Md. 557; Mackey v. Mackey's Admr.,

29 Gratt. (Va.) 158; Fitzhugh v. Jones, 6 Munf. (Va.) 83; Calhoun v. Atchison, 4 Bush (Ky.), 261; Bell v. Offutt, 10 Bush (Ky.), 632; Haines v. Dearborn, 199 Pa. St. 474; Societe v. Old Jordan M. & M. Co., 9 Utah, 483; Matteson v. Scofield, 27 Wis. 671; Lawrence v. Railroad, 84 Wis. 427; Utley v. Donaldson, 94 U. S. 29; Alford v. Wilson, 20 Fed. 96; Central Tr. Co. v. Railroad, 38 Fed. 561; Pomeroy on Contracts, sec. 64, *et seq.;* Stotesburg v. Massengale, 13 Mo. App. 221; Broome v. Wright, 15 Mo. App. 406; Baldwin v. Ins. Co., 56 Mo. 154; Wilson v. Lee's Summitt, 63 Mo. 137; Riggins v. Railroad, 73 Mo. 598; Mastin v. Grimes, 88 Mo. 485; Allen v. Chouteau, 102 Mo. 309; 1 Thompson on Trials, sec. 1098; Primm v. Haren, 27 Mo. 205; Chapman v. Railroad, 146 Mo. 841; Carp v. Insurance Co., 104 Mo. App. 518; Barker v. Pub. Co., 152 Mo. App. 722. (2) As to whether or not there was a contract entered into between plaintiff and defendant must appear from all circumstances and the documents submitted in evidence as the foundation of an inference of fact. The real intention of the parties is therefore a question of fact, which, once found, the appellate court will not disturb. This case, being an action at law, comes to this court with a finding of facts by the trial court upon special request so to do. In such a case a finding of fact is in the nature of a special verdict, which this court may not interfere with on appeal, there being substantial evidence to support it. Stewart v. Grain Co., 163 Mo. App. 473; Walther v. Null, 233 Mo. 104; Walton v. Railroad, 40 Mo. App. 544; Nichols v. Carter, 49 Mo. App. 401; Rausch v. Michel, 192 Mo. 293; Jordan v. Davis, 172 Mo. 599; Sutter v. Raeder, 149 Mo. 307; Miller v. McCaleb, 208 Mo. 572; Broome v. Wright, 15 Mo. App. 410; Wright v. Mc-Pike, 70 Mo. 180; Mills v. Lewis, 8 Mo. App. 561; 1 Thompson on Trials, sec. 1098; Primm v. Haren, 27 Mo. 205; Chapman v. Railroad, 146 Mo. 481; Carp v.

Insurance Co., 104 Mo. App. 518; Barker v. Pub. Co.,
152 Mo. App. 722.

NORTONI, J.—This is a suit for damages accrued
to plaintiff through an alleged breach of contract.
Plaintiff recovered and defendant prosecutes the ap-
peal.

Plaintiff is an incorporated railroad company, and
defendant, incorporated, is engaged in the business
of selling railroad supplies. It is asserted by plaintiff
that it entered into a written contract with defendant
on July 9, 1908, whereby defendant bound itself to de-
liver to it at Boston, Massachusetts, 1000 tons of rails
and angle bars at the price of $20 per ton; that defend-
ant breached this contract and refused to deliver the
rails in accordance therewith. Because of this plain-
tiff went into the market and purchased other rails at
an increased price, to its damage in the sum of
$1266.50, for which amount judgment was given.

The contract of purchase relied upon, if one ap-
pears at all, is to be found in certain letters and tele-
grams passing between the parties. It is insisted by
defendant that the minds of the parties never met with
respect to the subject-matter of the controversy and,
therefore, no contract appears. Of course, if this ar-
gument is sound, the judgment for plaintiff may not
be sustained, for if there is no contract, there can cer-
tainly be no breach entailing a right to recover dam-
ages thereon.

The authorities are agreed as to the necessary ele-
ments of a contract entered into by letter or tele-
graphic correspondence. It is said, ''If one person
by letter proposes to bind himself by contract and
states the subject-matter and terms of the contract, the
party to whom the proposition is made must, within a
reasonable time after the receipt of the letter, accept
the proposition as made. The acceptance must com-
prehend the entire proposition and must not qualify

its terms or subject-matter. If the acceptance in any material way differs from the original proposition, it amounts to a rejection of the offer.'' In other words, any variance in the acceptance as by introducing a new term of the contract operates as a rejection of the offer and frequently serves to submit an entirely new proposition in lieu of it. [See Cangas v. Rumsey Mfg. Co., 37 Mo. App. 297; 307; Bailey & Smith v. Moorhead, 122 Mo. App. 268, 99 S. W. 39; Gaus & Sons Mfg. Co. v. Chicago Lumber, etc. Co., 115 Mo. App. 114, 92 S. W. 121.] It is said in 9 Cyc. 267: ''An acceptance, to be effectual, must be identical with the offer and unconditional. Where a person offers to do a definite thing and another accepts conditionally or introduces a new term into the acceptance, his answer is either a mere expression of willingness to treat or it is a counter proposal and in neither case is there an agreement.''

With these precepts in mind, we will set out and examine the relevant correspondence relied upon to reveal a contract. For the sake of brevity, a portion of this correspondence, which at most is but introductory, may be properly summarized as follows: On June 28, 1908, plaintiff wrote defendant that it was in the market for five or six hundred tons of steel rails at about $21.50 per ton f. o. b. St. Louis, Kansas City or territory that would not require a higher freight rate, or $20 per ton f. o. b. Chicago or territory affording a similar freight rate. In reply to this letter, defendant, on July 1, wired and also wrote plaintiff to wire the exact weight of the rails it desired to purchase, and plaintiff responded by wire that it wanted 56-lb. rails. On July 2, defendant wrote plaintiff that it had a lot of 56-lb. relaying rails in the east and was figuring as to what these would cost delivered at Galveston, Texas and as soon as it obtained this information would wire plaintiff concerning it. On July 3, defendant wrote plaintiff the following letter:

"The Jos. Joseph & Bros. Co.,

St. Louis, Mo., July 3, 1908.

"Mr. Felix Jackson, V. P. & G. M.,

Houston & Brazos Valley R. R. Co.,

Velasco, Texas.

"Dear Sir:—

"We can offer you 500 tons to 600 tons of original 56-lb. relaying steel rails with the necessary fastenings for same at $24 per gross ton f. o. b. cars Galveston, Texas.

"These rails are offered to you subject to prior sale and we would advise you to wire us as quickly as possible as to whether you can accept them or not as we are figuring with several other parties on these rails.

"Trusting to hear favorably from you, we remain,

"Yours truly,

"THE JOS. JOSEPH & BROS. CO.

"Per A. L. MARKS."

In answer to this, on July 6, plaintiff wired defendant requesting it to quote price of 56-lb. rails f. o. b. vessel at eastern port, plaintiff to arrange shipping. Answering this message defendant wired plaintiff on the same date, acknowledging receipt and offered 56-lb. rails at $20.50 per ton f. o. b. Boston, subject prior sale, and requested an answer. On July 7, plaintiff inquired by wire of defendant how many 56-lb. rails it had in Boston and whether or not it would accept $20 per ton. To this message defendant answered by wire, on July 8, "Have about 1000 tons 56 in Boston—will accept $20 there. Answer quick." Up to this time it is obvious no contract was entered into between the parties, for the correspondence and telegrams are purely preliminary. After these inquiries and preliminaries, plaintiff wired defendant on July 8 as follows:

"Velasco, Texas, 7-8-08.
"The Jos. Joseph & Bros. Co.,
      "St. Louis, Mo.
   "Will give twenty dollars per gross ton for thousand tons first quality fifty-sixes angle bars weighed in f. o. b. ship Boston subject Hunt's inspection.

                              FELIX JACKSON."

   It cannot be said that this telegram constituted a complete and unconditional acceptance of that of defendant's immediately preceding and dated on the same day, for it introduces a new term with respect to the rails and angle bars being "subject to Hunt's inspection." However, on the following day, July 9, defendant wired plaintiff as follows:

                    "St. Louis, Mo., July 9, 1908.
"Felix Jackson,
      "Velasco, Texas.
   "Accept your price twenty dollars f. o. b. ship Boston for one thousand tons fifty-sixes. Mailing contract 500 tons shipment 30 days—500 tons shipment sixty days.

                    JOS. JOSEPH & SONS."

   It is this telegram of July 9, which on its face purports to accept "your price $20 f. o. b. ship Boston for 1000 tons fifty-sixes," that is relied upon as an acceptance of the offer immediately preceding, which proposed the price of $20 per gross ton subject to Hunt's inspection. But it is obvious that the telegram last set out, of date July 9, does not reveal a complete and unconditional acceptance of plaintiff's proposition, for by its second sentence it introduces new terms entirely with respect to a shipment of 500 tons in thirty days and 500 tons in sixty days, and furthermore suggests that a contract touching these matters is to be signed by the parties. The concluding sentence of the telegram is, "Mailing contract 500 tons shipment thirty days—500 tons shipment sixty days." Instead

of being an unconditional acceptance of plaintiff's proposition, this telegram introduced new terms entirely with respect to the delivery of the rails, for until then nothing was said suggesting that the full 1000 tons should not be delivered together and within a reasonable time. In the absence of an express stipulation touching this matter, the law would imply but one delivery, including the full 1000 tons, to be made within a reasonable time after purchase, and not 500 tons in thirty days and 500 tons in sixty days. Furthermore, this telegram asserts on its face that the acceptance was subject to the provisions of a contract being mailed by defendant to plaintiff covering the details referred to. Where negotiations are being conducted with respect to a subject-matter such as here involved, which suggests that complications may arise with respect to the matter of delivery of and payment, etc., for a large quantity of goods, it is certainly proper for one to withhold his complete consent to and acquiescence in a proposal until these details are specifically arranged for in a written contract. Indeed, each party in such circumstances should expect as much from the other. When, therefore, a telegram purporting an acceptance of the proposal of the buyer suggests further that a written contract is being mailed with respect to the terms of the contract, the acceptance must be deemed to have been qualified by the terms of the contract prepared and forwarded. Until this contract is executed there is no final or unqualified acceptance of the offer and, therefore, no contract between the parties, for the reason the minds have not met on the same thing in the same sense. [For authorities directly in point, see Runyon v. Wilkinson, etc. Co., 57 N. J. Law 420; Sparks v. Pittsburgh, 159 Pa. St. 295.] It is entirely clear that there was no valid contract consummated between the parties on July 9, for the reasons above suggested.

The contract which was forwarded by defendant to plaintiff was not accepted by plaintiff, and defendant

Dales v. Railroad.

sold the rails to another party within a few days there-after. As it is not urged here that plaintiff accepted the terms of the contract tendered nor that defendant entered into a contract with it, except in so far as one is revealed through the telegrams set forth, it is un-necessary to prolong the opinion by copying the sub-sequent correspondence.

The judgment should be reversed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.