Stagg v. Compton.

No. 8707.

STAGG v. COMPTON.

PRACTICE.—*Motion for New Trial.—Bill of Exceptions.*—The motion for a new trial and exception to the ruling thereon may be made a part of the record by a bill of exceptions.

SAME.—*Stenographer's Report of Evidence.*—A stenographic report of the evidence, embodied in a bill of exceptions, followed by a statement that that was all the evidence given in the cause, shows the evidence, though it do not appear that the stenographer was sworn.

CONTRACT.—*Offer of Sale and Acceptance by Letter.—Parol Evidence.*—In an action for the price of a horse alleged to have been sold by the plaintiff to the defendant, the plaintiff, admitting that he had sent a letter to the defendant containing an offer to sell him the horse for two hundred dollars, offered in evidence a letter, afterwards received from and signed by the defendant, of the tenor following: " I might purchase your horse at $200—the price you asked. I would like to get it at once, if it will do me, which I am quite certain it will. Please reply at once."

*Held,* that the two letters do not show a complete written contract for the sale of the horse, and that the one offered was competent evidence, in connection with parol evidence offered, to show the sale charged.

From the Marion Superior Court.

*W. Morrow,* for appellant.

*A. B. Young,* for appellee.

WOODS, J.—The appellant brought the action, alleging, in his complaint, that the appellee was indebted to him in the sum of two hundred dollars, the price of a horse sold and delivered to the appellee, at his special instance and request. The court rendered a finding and judgment for the defendant, which, at the general term, was affirmed. The appellant insists that the court erred in excluding certain evidence offered by him.

The appellee insists that the question sought to be presented is not before the court, because the motion for a new trial and the evidence in the case are not in the record.

The transcript contains an order book entry, which shows the filing and overruling of the appellant's motion for a new trial, and his exception to the ruling, but, instead of copying

the motion at this place, the clerk has noted " (Inserted in the bill of exceptions hereinafter copied. See page —, line —, of this transcript)." A bill of exceptions was filed within the time limited by the court and in that the motion for a new trial is set out, and a statement made of the ruling of the court thereon, and of the appellant's exception to the ruling.

It is true, as counsel say, that a motion for a new trial is a part of the record, without the aid of a bill of exceptions, and the ruling of the court upon the motion and the exception thereto may be shown by an order-book entry; but, nevertheless, a bill of exceptions is a competent and proper, though needlessly cumbersome, way of making up the record of the ruling on such motion.

In reference to the evidence, the bill of exceptions contains the following recital: "Whereupon the plaintiff, to prove the burden of the issue on his part, introduced the following evidence, to wit: So much of the evidence of Charles W. Stagg, taken down by Charles D. Johnson, an official stenographer, as was admitted by the court, is as follows:" Here follows a statement of the evidence, certified by the reporter as " all that was offered and introduced on the trial of said cause." From this point the bill of exceptions proceeds to state the offers of the appellant to introduce other evidence, the rulings of the court and the appellant's exceptions, followed by the statement, " which was all the evidence given and offered in the cause;" and following this the filing and overruling of the motion for a new trial, etc., all signed by the judge who presided at the trial.

It is objected that the record does not show that the reporter was appointed and sworn.

As the record comes before us, the objection is immaterial. The evidence is embodied in the bill of exceptions, is authenticated by the signature of the judge, under the statement already quoted, showing that it was all the evidence given or offered. It is the same, therefore, as if there had been no reporter, and as if the bill of exceptions had been made up in the usual way,

without reference to the fact of there having been a stenographic report.

This brings us to the real question in the case. The plaintiff offered in evidence the following postal card, having first given evidence that it was in the handwriting of the defendant, and had been received by the appellant through the post-office at Hot Springs, Arkansas, to wit:

"INDIANAPOLIS, March 16, 1878.

"CHAS. W. STAGG, Hot Springs, Arkansas:

"I think I might purchase your horse at $200, the price you ask me. How can I get it? I would like to get it at once, if it will do me, which I am quite certain it will. Please reply at once, and oblige,      Yours Truly,

"A. B. COMPTON."

Counsel for the appellee objected to the reading of this card in evidence without the introduction of the letter to which it was a response; and thereupon, in answer to a question by the court, the appellant, who was under examination as a witness, said there had been "one letter in which the proposition referred to in that was made." The court then enquired whether steps had been taken to secure the original letter, and, being informed that none had been taken and no notice to the defendant to produce had been served, the court sustained the objection. The plaintiff excepted to the ruling, and offered to prove conversations had by him with the defendant, prior to the receipt of the postal card, in relation to the sale of the horse, at the price of $200; but, upon objection that the conversations were merged in the writing, the court excluded the testimony. It was then shown that no correspondence in reference to the sale of the horse passed between the parties after the postal card, and, Wilson Morrow having been called and sworn as a witness, the appellant offered to prove by him "that he received the postal card offered in evidence, addressed to Chas. W. Stagg and signed by the defendant, about the first of April, 1878, and called upon the defendant with the card,

and delivered to the defendant the horse, and received from him the receipt now offered in evidence :

"'To MR. MORROW, Indianapolis :

"'April 6th, 1878.—I have received Charles W. Stagg's horse and paid the charges on the same, which was six dollars.

"'Yours Truly,      A. B. COMPTON.'"

This was excluded by the court, and, the plaintiff excepting offered to prove further by the same witness, "that he stated to Mr. Compton, at the time he presented the postal card, that he was authorized to let him have the horse upon his paying the charges, and asked him for a receipt; that Mr. Compton refused to give a receipt for the horse until he saw the horse; that some days afterwards he gave to the witness the receipt offered in evidence, stating that he received the horse and had paid the charges." This testimony the court also excluded, and the appellant excepted.

The court, both at special term and at the general term, it seems, acted upon the theory that it was apparent that the parties had made a contract in writing, if any contract at all, for the sale of the horse, consisting in the letters which had passed between them, and that it was not competent for the plaintiff to offer the postal card by itself, but only in connection with the letter of the plaintiff to the defendant, which preceded the postal card. In the opinion of the majority of the court, at the general term, it is said : " It is clear from the quotations made from the record, that the contract for the sale of the horse was made by the correspondence between the parties. According to the plaintiff's testimony, a letter of his proposed the price, and the postal card, which terminated the correspondence, contained an acceptance of this written proposition; so that both proposition and acceptance were in writing, the contract was complete, and, being complete, the writings, and the writings alone, can prove the said agreement. The contract did not rest partly in parol and partly in writing, but was all in writing."

If we were able to concur in this construction of the facts

proven and the evidence offered, it is probable that we could not dissent from the final conclusion reached by the superior court; but our judgment is that the evidence did not show a contract in writing. It is conceded that the postal card, which was offered, was the last written communication between the parties; and it is quite clear that if nothing further had occurred, there would have been no sale, nor contract for the sale of the horse. By that card, the defendant said : " I think I might purchase your horse at $200, the price you ask me. How can I get it? I would like to get it at once, if it will do me, which I am quite certain it will. Please reply at once and oblige." Now, if the plaintiff had replied, by letter, directing the defendant to take the horse at the price named, and telling him when and how he could get it, there would still have been no completed contract, because, by the terms of his postal card, the defendant was entitled to determine whether the horse would suit him. The plaintiff, however, did not answer the defendant's last letter, but sent it, as it was proposed to prove, to his attorney or agent, Morrow, with authority to deliver the horse to the defendant, if he would pay certain charges to the amount of six dollars ; and, acting upon this authority, Morrow carried the postal card to the defendant, communicated his authority, delivered the horse, which the defendant accepted, and receipted for, and paid the stipulated charges. Without these transactions there was no contract; with them, there was a contract, or, at least, such evidence as would have warranted the court in finding a contract, such as was declared upon. The proffered evidence ought, therefore, to have been admitted.

The contract was not entirely a written contract. The postal card was not the acceptance of a proposition, but was itself a proposition, though not an absolute one. The plaintiff having sent it to his agent, with the direction to let the defendant have the horse upon paying the charges, and the horse having been delivered and accepted accordingly, the letter was an important memorandum of the terms of the contract, though

it was essentially a parol contract. *Board, etc., v. Shipley,* 77 Ind. 553. There is nothing in this letter which indicates that there had been any antecedent correspondence between the parties, and, while the plaintiff's testimony shows that there had been such correspondence, there is nothing to indicate, that, if produced, it would have had the slightest bearing upon the rights of the parties. If it had any significance whatever, it was in the possession of the defendant, and the privilege was his to produce it for whatever advantage it could afford him. At most, it could be evidence, not of a written, but only of the parol, contract of the parties; and, this being so, it is clear that the plaintiff was entitled to the evidence which he offered, without offering or having taken steps to procure the production or to prove the contents of the other letter. See the following authorities: Wharton Evidence, sections 61, 617, 1103; *Barrymore* v. *Taylor,* 1 Esp. 326; *Walson* v. *Moore,* 1 C. & K. 626; *DeMedina* v. *Owen,* 3 C. & K. 72; *Lester* v. *Sutton,* 7 Mich. 329; *Wells* v. *Milwaukee, etc., R. R. Co.,* 30 Wis. 605; *Trischet* v. *Hamilton, etc., Ins. Co.,* 14 Gray, 456; *Stone* v. *Sanborn,* 104 Mass. 319; *Wiggin* v. *Boston, etc., R. R. Co.,* 120 Mass. 201; *Thomas* v. *Dering,* 1 Keen, 729.

The judgment is reversed, with costs, and with instructions to grant a new trial.

ELLIOTT, C. J., did not participate in this decision.