THERESA R. CORCORAN

*v.*

NATHAN S. WHITE *et al.*

*Filed at Ottawa May 15, 1886.*

1. . CONTRACT—*conditional acceptance of an offer to sell.* To constitute a contract of sale of land by the acceptance of an offer to sell, the acceptance must be unconditional. No contract will result from a letter in reply, that the party will accept the offer "provided the title is perfect." At any time before an unconditional acceptance of an offer and compliance with its terms it may be withdrawn.

2. SAME—*receipt of a deposit, whether a contract of sale.* The agents for the owner or party having the power to sell a lot, gave to a party desirous of purchasing the same, a receipt as follows: "Received of J. H. W., attorney for T. R. C., his check for $500, as deposit on account of proposed purchase of sub-lot 2, etc., said sum of $500, when paid, to apply on said purchase of said lot at $8000 cash, or to be returned to him in case said sale can not be perfected, say within sixty days from this date, or in case the title should prove defective, it being understood that we are to forward a deed to the owner of said lot and recommend its execution.—Lyman & Giddings:" *Held,* not the evidence of a contract of sale, but only a proposed purchase and agreement of the agents to forward a deed and recommend its execution.

APPEAL from the Circuit Court of Cook county; the Hon. T. A. MORAN, Judge, presiding.

Mr. B. M. SHAFFNER, for the appellant.

Mr. DANIEL L. SHOREY, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in equity, filed by Theresa R. Corcoran, against Nathan S. White and others, to compel the specific performance of an alleged agreement to sell to the complainant sub-lot 2 of lot 1, in block 3, in the original town of Chicago. On final hearing upon bill, answers, replications, and proofs adduced, the bill was dismissed, and the complainant appealed to this court.

The facts relied upon as establishing a case for the complainant, are, as follows: The lot in question belonged to Christine Cordell, of West Virginia, deceased, who died leaving four children surviving her, and a will which contained this provision:

"*Fifth*—I give and devise all my real estate to be sold by my executor, and do hereby authorize him to do so as soon as it can be done without prejudice to my children, and after first consulting them about the sale; and after deducting from the sale of my Chicago lot the legacies herein given for the benefit of my grand-son and grand-daughter, and also the other legacy herein given, I give and bequeath all the rest and residue of the sales of my real estate, and all other property, to my four children."

Nathan S. White was appointed executor. On July 3, 1880, Thomas Lyman, who was authorized by the will to lease the property until it was sold, and the heirs at law of the testatrix, executed a lease of the premises to one Samuel Thomas, from August 1, 1880, to August 1, 1885, which was subsequently, February 3, 1883, assigned to Michael J. Corcoran, the husband of appellant. At the time of the assignment there was a one-story and basement brick building, valued at $4000, standing on the premises, which building appellant had purchased. After this assignment, improvements amounting to $600 were made on the building by appellant. About March 19, 1883, appellant, desiring to purchase the ground, caused her attorney, James H. Ward, to write letters to White, the executor, and to some of the heirs at law, asking whether the premises were for sale. The following answer was received from White:

"CHARLESTON, W. VA., *March 24, 1883.*
"*J. H. Ward, Esq.:*

"DEAR SIR—In response to your letter of the 19th, addressed to Dr. Cordell, of Baltimore, and forwarded to me by him, I would state that, as the personal representative of the

estate of Mr. Cordell, I have authorized Thomas Lyman, of your city, to sell the property you refer to, and will be glad to have you call on him at 101 Washington street, your city. I will write to Mr. Lyman at once, and inform him of your wishes.

Very respectfully,     N. S. WHITE."

Ward called upon Lyman, learned from him the property was for sale, and afterward, about April 13, 1883, received the following postal card from Lyman:

"*April 13, 1883.*

"DEAR SIR—I can sell the lot you wanted at $7000. Please let me know at once what your parties say.

Yours,     T. LYMAN."

April 14, 1883, Ward wrote the following:

"*April 14, 1883.*

"*Thomas Lyman, Esq., 101 Washington street, city:*

"DEAR SIR—Yours of the 13th inst. at hand, and replying to the same will say that my client will accept your proposition for the premises 15 North Clark street, and will pay $7000 for the same, provided the title is perfect. I will call at your office again on Monday, at ten o'clock, at which time I can get the abstract and have it examined. I called to-day with my client, but you had left your office.

Respectfully,     JAMES H. WARD."

Mr. Ward testifies that they called on Lyman, Monday, told him they would call the next day, as Mr. Corcoran was unable to call that day; that he and Corcoran went and saw Lyman, and he said the property was not for sale; that they asked for the abstract, and were ready to make a deposit on the property, but they were informed by Lyman the property was not for sale at that price. Some time in May, 1883, Ward again called on Lyman, when the latter informed him that the premises could be purchased for $8000. Appellant agreed to

pay the additional $1000. Lyman stated he was going East. On his return he executed and delivered the following:

"*July 18, 1883.*

"Received of James H. Ward, attorney for Theresa R. Corcoran, his check for $500, as deposit on account of proposed purchase of sub-lot 2, in lot 1, in block 3, in original town of Chicago, said sum of $500, when paid, to apply on said purchase of said lot at $8000 cash, or to be returned to him in case said sale can not be perfected, say within sixty days from this date, or in case the title should prove defective, it being understood that we are to forward a deed to the owner of said lot and recommend its execution.

LYMAN & GIDDINGS."

The deed was forwarded accordingly, but never executed, Mr. White being unwilling to sign the deed until the heirs had done so, and one of them seems to have refused. Repeated demands were made on Lyman for the deed, appellant saying she was ready to pay the remaining $7500, and that she would accept a deed from White without the heirs joining, or with as many as would join. After the giving of the receipt of July 18, 1883, appellant expended some $600 on the building.

In respect to the alleged offer of sale for $7000, by his postal card of April 13, 1883, Lyman testifies, without contradiction: "In relation to that card I would say that Mr. Ward came over and said his parties would take the property, and arranged to come in the next morning and deposit $500. He came in two days after and brought in a check for $200, not certified, which I refused to take. The next morning I discovered the record of the great sale opposite where the Sibley building now stands, and as a trustee under the will I felt it my duty to decline to carry out the $7000 sale." He also testified that he offered back the $500 deposit, which was refused.

It is impossible from the foregoing to make out any contract of sale. Assuming, as is contended, that under the will the executor, White, had an estate in the lot, and not a mere

power to sell, and that his letter of March 21, 1883, shows sufficiently that Lyman had from him authority, in writing, to make sale of the lot, and conceding that Lyman's postal card of April 13, 1883, was an offer to sell, and not mere information of authority to sell, yet, under that postal card, and Ward's letter in reply, of April 14, 1883, there did not arise a contract of sale. In order to that result there should have been an unconditional acceptance of Lyman's offer. There was here but a conditional acceptance,—one upon the condition that the title was perfect. Again, there was no compliance with the offer before it was retracted. The proposition was that Lyman could sell the lot for $7000. There was neither a payment nor tender of payment of the $7000. As Lyman testifies, without contradiction, there was a promise made to come in the next morning and deposit $500. Appellant's agent came in two days after, and brought in a check for $200, not certified, which Lyman refused to take. The next morning he discovered the record of an important sale of property in the vicinity, which he considered made it his duty to decline to carry out the $7000 sale. The offer had not then been met by compliance with its terms, and there was the right to retract it. The receipt of July 18, 1883, obviously, does not evidence a contract of sale. It shows but a proposed purchase of the lot, and that the agents were to forward a deed to the owners and recommend its execution.

We are of opinion the circuit court did right in dismissing the bill, and the decree is affirmed.

*Decree affirmed.*