# ELIJAH MYERS AND I. HARBY MOSES *v.* BENJAMIN F. TRESCOTT.

*Contract — sale of personal property — acceptance of offer, as made.*

One Trescott, by letter, offered to sell to the firm of E. Myers & Co. a certain kind of dried apples in quantities and at prices named in said letter. E. Myers & Co., by letter, accepted the proposition contained in Trescott's letter, but added, in their letter of reply, "We do this, of course, on the presumption that the goods are of 'Prime' quality and run 200 pounds net or more per bbl. Please send us sample at once & we will then give you shipping directions."

In an action by E. Myers & Co. upon this alleged contract:

*Held,* that there was no sale, E. Myers & Co. not having accepted Trescott's offer as made, but making the matter depend on the new elements of weight per barrel, condition and sample.

EXCEPTIONS ordered to be heard in the first instance at the General Term, after a verdict for $182.54, rendered in favor of the plaintiffs by direction of the court upon a trial at the New York Circuit on February 20, 1890.

*T. Henry Dewey,* for the plaintiffs.

*James C. Foley,* for the defendant.

DANIELS, J.:

A verdict in the action was directed by the court in favor of the plaintiffs for the sum of $182.54 as damages for the breach of a contract for the sale of what were called "chops." The article alleged to be sold was dried apples, packed and understood in the trade as "chops." On the 22d of January, 1888, the defendant wrote to the plaintiffs:

"PAVILION, N. Y., *Jan.* 22, 1888.

"E. MEYER & Co., *New York:*

"GENTS.— If you can use my entire lot of chops at 2¾c. I will let you have them. I have between 65,000 and 66,000 pounds, 2¾, F. O. B., New York, lighterage free, or one car load at 2⅞, N. Y.

"If you want them let me know promptly. They are packed heavy in bbls., having used a 'Sampson jack' to pack them. Of uniform quality in every respect.

"Yours, etc.,

"B. F. TRESCOTT."

And they replied to this letter on the twenty-fourth of the same month as follows :

"NEW YORK, *January* 24, 1888.

"Mr. B. F. TRESCOTT, *Pavilion, N. Y.:* .

"DEAR SIR.— Your favor of 22d just to hand, and we have concluded to accept your offer of all your chops, between 65,000 and 66,000 pounds, @ 2¾c. delivered, lighterage free, New York.

"We do this, of course, on the presumption that the goods are of 'Prime' quality, and run 200 pounds net or more per bbl.

"Please send us sample at once & we will then give you shipping directions.

"Yours, truly,

"E. MYERS & CO."

And the controlling question in the case is, whether this was such an acceptance of the plaintiffs' offer as resulted in the making of a contract. The offer was direct and explicit, and so was the first paragraph of the defendant's reply, and if the correspondence had ended there, a legal contract between the parties would have been made. But it did not, for the plaintiffs then proceeded to add a statement by way of qualifications of their acceptance. And they were, that the goods were of prime quality and ran 200 pounds net or more to the barrel, and requested a sample to be sent at once, when the plaintiffs would give the defendant shipping directions. This was in the nature of conditions added, rendering the preceding explicit acceptance dependent upon the facts that the apples were of prime quality and ran 200 pounds or more to the barrel, and that the quality should be further assured by a sample at once sent to the plaintiffs. These qualifications left the transaction open in such a manner that, if the plaintiffs did not find the apples either to be of prime quality or to run 200 pounds net or more to the barrel, they would be at liberty to refuse to receive them. And it made the acceptance to depend upon facts not contained in the defendant's proposals of sale.

To create a binding contract by way of correspondence the law requires the offer to be accepted by the party to whom it may be made, as it shall be contained in the offer itself. If that is not done, then the minds of the parties do not meet upon the terms contained in the offer, and no contract of a binding nature is brought into existence. Upon this subject it was said in *Eliason* v. *Henshaw* (4 Wheaton,

225) : " That an offer of a bargain by one person to another, imposes no obligation upon the former until it is accepted by the latter according to the terms in which the offer was made. Any qualification of, or departure from, those terms, invalidates the offer, unless the same be agreed to by the person who made it. Until the terms of the agreement have received the assent of both parties, the negotiation is open and imposes no obligation upon either." (Id., 228.) And this principle was followed in *Carr* v *Duval* (14 Peters., 77, 83) and in *Mactiers' Administrators* v. *Frith* (6 Wend., 103) ; *Mayer* v. *McCreery* (9 N. Y. St. Rep., 114; affirmed 119 N. Y., 434) ; *Potts* v. *Whitehead* (23 N. J. Eq., 512) ; *Lyman* v. *Robinson* (14 Allen, 242, 254) ; *Corcoran* v. *White* (117 Ill., 118) ; *Sievewright* v. *Archibald* (17 Q. B., 103), and *Carter* v. *Bingham* (32 Upper Canada, Q. B., 615).

The plaintiffs wrote again to the defendant on the 30th of January, 1888, giving directions for the shipment of the apples. But these directions he declined to comply with, stating to them in a letter of the first of February that their reply of the twenty-fourth of January had not been received until the twenty-eighth, when he found a telegram from other parties awaiting him, offering a higher price for the apples, which he immediately accepted. A further letter was written by the plaintiffs to the defendant on the ninth of February, but neither this letter nor the oral evidence given in the case made any change in the least degree beneficial to the plaintiffs ; for the contract, to be binding upon the defendant, was required by the statute of frauds to be in writing. And as long as the proposal made by him was not unqualifiedly accepted by the plaintiffs no such contract was created ; and the defects in the correspondence could not be removed or corrected by any conversation to which the defendant was a party, or letters afterwards written to him with whose terms he declined to comply.

The plaintiffs accordingly were not entitled to recover under the evidence as it was produced in the action, and the verdict should be set aside and a new trial ordered, with costs to the defendant to abide the event.

Van Brunt, P. J., and Brady, J., concurred.

Verdict set aside and a new trial ordered, with costs to the defendant to abide event.