### CORYDON MILLING COMPANY *v.* NOBLESVILLE MILLING COMPANY.

[No. 9,782.   Filed March 6, 1919.]

1. CONTRACTS.—*Letters Evidencing.*—A valid contract may be
made by correspondence, provided such correspondence contains
a specific offer which is unconditionally accepted. p. 497.
2. CONTRACTS.—*Elements.*—*Meeting of the Minds.*—Before there
can be an agreement, there must be a meeting of the minds of
the parties on the matter attempted to be agreed on, and no
contract can be said to have been created where their minds
have not agreed on one and the same thing. p. 497.
3. SALES.—*Contracts.*—*Evidence.*—*Correspondence.*—In an action
for breach of contract, evidence consisting of correspondence
covering the purchase and sale of flour *held* not to show a com-
plete contract, in the absence of an unqualified acceptance by
either party. p. 499.

From Hamilton Circuit Court; *Ernest E. Cloe,*
Judge.

Action by the Corydon Milling Company against
the Noblesville Milling Company. From a judgment
for defendant, the plaintiff appeals. *Affirmed.*

*F. J. Pentecost* and *Fred E. Hines,* for appellant.
*Thomas E. Kane,* for appellee.

NICHOLS, J.—This was an action commenced in the
Hamilton Circuit Court by the appellant against the
appellee for damages growing out of an alleged
breach of contract, which contract consisted of cer-
tain letters and telegrams that passed between the

appellant and the appellee. The appellee demurred, with memorandum, to the amended complaint, alleging as the ground for such demurrer that the complaint did not state facts sufficient to constitute a cause of action. Appellee's demurrer was sustained by the court, to which ruling the appellant excepted. The appellant refusing to plead further, but electing to stand upon its complaint, final judgment was rendered in favor of the appellee. From this judgment this appeal is prosecuted. The error assigned in this court for reversal is that the Hamilton Circuit Court erred in sustaining appellee's demurrer to the appellant's amended complaint.

The complaint avers in substance that the appellant was engaged in the business of buying and selling grain and the manufacturing of flour in the city of Corydon, Kentucky, and that the appellee was engaged in a like business in the city of Noblesville, Indiana. That about August 18, 1914, the appellant and the appellee entered into a written contract and agreement whereby the appellee agreed to furnish the appellant 600 barrels of Kismet Patent Flour, to be delivered at the appellant's place of business in Corydon, Kentucky, said deliveries to begin on or before January 25, 1915, and to continue at the rate of not less than 200 barrels per month until all of the flour was delivered; that in consideration therefor the appellant agreed to pay appellee for the same at the rate of $4.75 per barrel, to be paid by appellant in instalments, upon the delivery of said flour. The contract consisted of letters and telegrams between the appellant and the appellee, which were made a part of the complaint and are as follows:

"Corydon, Ky. Aug. 11th, 1914.
"Noblesville Milling Company,
Noblesville, Indiana.
Gentlemen:
We are in the market for 500 to 1000 bbls. Flour from strictly soft Red Winter wheat delivered at Corydon, Ky., Jute and wood basis. Please send samples all your grades, and quote lowest prices forward shipment scattered January, February, March.

"Very respectfully,
Corydon Milling Co., by, L. O. Stapp.

"Noblesville, Ind. Aug. 17th, 1914.
"Corydon Milling Company,
Corydon, Ky.
Gentlemen:
Your letter of the 11th came duly to hand but have withheld an answer until we could ascertain the correct rate your station. This information has been given us today and we take pleasure in quoting you Kismet our winter wheat patent, at $4.60 in wood delivered Corydon, for gradual shipment during the months of January, February and March. This offer, however would be subject to your wire acceptance reaching us at once and then only subject to change of the market. We know you would have no trouble in the handling of our flour, for it is a first class flour and straight soft red winter wheat, no mixture. Jute would be the regular differential in your state. Thanking you for the inquiry and hoping

it will be possible for us to trade, we beg to remain,

"Very truly yours,
Noblesville Milling Company.

Western Union Telegram.
"Corydon, Ky., Aug. 18, 1914.
"Noblesville Milling Co.,
Noblesville, Indiana.
Book six hundred barrels Kismet soft winter patent flour wood basis at price and shipping dates specified in your letter August seventeenth subject to our inspection and approval of baking sample to be forwarded at once by you answer at once by telegram.
"Corydon Milling Company.

"Corydon, Ky., Aug. 18, 1914.
"Noblesville Milling Company,
Noblesville, Indiana.
Gentlemen:
We wired you this A. M. as follows: 'Book six hundred barrels Kismet soft winter patent flour wood basis at price and shipping dates specified in your letter of August 17th, subject to our inspection and approval of baking sample to be forwarded at once by you, answer at once by telegraph.' Which we now fully confirm. As soon as sample arrives will report result of inspection.
"Very truly yours,
Corydon Milling Company.

NOVEMBER TERM, 1918. 495

Corydon Milling Co. *v.* Noblesville Milling Co.—69 Ind. App. 491.

Western Union Telegram.

"Noblesville, Ind. Aug. 18, 1914.

"Corydon Milling Co.,
Corydon, Ky.

Market three cents higher at ten thirty sending sample if on receipt satisfactory will try and trade on market basis.

"Noblesville Milling Company.


"August 18th, 1914.

"Corydon Milling Company,
Corydon, Ky.

Gentlemen:

We are just in receipt of your telegram telling us to book 600 barrels of Kismet wood, price quoted you the other day, subject to your inspection and approval of baking samples. We are sending this sample today and of course with the market 3 cents higher as it is at the writing of this letter, we could not confirm the price, we want to do business with you and if, on making careful investigation of the sample we are sending you, you find that it will meet requirements we can guarantee you the same quality of flour were we to ship you in carload lots. We, ourselves are firm believers in higher prices and if the market recedes to a point that justifies a decline of the price we named the other day will be glad to confirm. Keep in touch with us and we believe we can get you in on a good basis. Let us hear from you on receipt of sample.

"Very truly yours,
Noblesville Milling Company.

Western Union Telegram.

Corydon, Ky., Aug. 20th, 1914.

"Noblesville Milling Co.,

Noblesville, Indiana.

Reply your letter 18th sample satisfactory we are entitled to booking six hundred barrels Kismet per our wire order of the 18th. at *four sixty plus market advance to date of receipt our order by you* please let us have confirmation.

"Corydon Milling Company."

These letters and telegrams were received in due course of mail or wire. The complaint further alleges in substance that the appellant had performed all of the conditions of said contract on its part to be performed, and that it was ready and willing on the day set for the delivery of said flour to receive and pay for the same at the price agreed upon; that on January 4, 1915, appellant gave appellee shipping orders and directions, by letter, which were duly received; that the same was wholly ignored by the appellee, and that none of the said flour was delivered to the appellant; that the offer of $4.60, subject to change in the market, was never at any time withdrawn by the appellee, and that the appellant was ready to pay for said flour the price of $4.60 per barrel plus the market advance to date of acceptance by appellant of the offer to sell as made by the appellee. The complaint further alleges that appellant had made sales of flour to his customers on the basis of $4.75 per barrel, which was the price agreed upon between the appellant and the appellee, and that the appellee had agreed to deliver to appellant the flour in accordance with the terms of said agreement so

entered into. It is further averred that because of advance in the price of flour the appellant was damaged in the sum of $1,720, for which judgment is demanded.

It is well settled that a valid contract may be made by correspondence, provided such correspondence contains a specific offer which is unconditionally accepted. *Havens* v. *American Fire Ins. Co.* (1894), 11 Ind. App. 315, 39 N. E. 40. But care must always be taken not to construe as an agreement letters which the parties intended only as a preliminary negotiation. *Lyman* v. *Robinson* (1867), 96 Mass. (14 Allen) 242, 254. The question to be determined in this case is whether the correspondence which the appellant claims to be a contract between the parties, and which is made the basis of the appellant's suit, and upon which the complaint must stand or fall, shows an agreement upon which the minds of the parties met. Before there can be said to be such an agreement between the parties, there must be a meeting of the minds of such parties, on the matter attempted to be agreed on, and no contract can be said to have been created between the parties where their minds have not agreed on one and the same thing. *Miller* v. *Sharp* (1912), 52 Ind. App. 11, 100 N. E. 108, and the cases cited.

In the case of *Stagg* v. *Compton* (1881), 81 Ind. 171, the defendant wrote a card to the plaintiff with reference to the purchase of a horse, which was as follows: " 'I think I might purchase your horse at $200, the price you ask me. How can I get it? I would like to get it at once, if it will do me, which I am quite certain it will. Please reply at once, and oblige.' "

It was held that, even if the plaintiff had replied to this card by a letter directing the defendant to take the horse at the price named and telling him when and where he could get it, there would still have been no completed contract, because, by the terms of his postal card, the defendant was entitled to determine whether the horse would suit him.

In the case of *Potts* v. *Whitehead* (1872), 23 N. J. Eq. 512, it was held that an acceptance, to be good, must be such as to conclude an agreement or contract between the parties, and to do this it must in every respect meet and correspond with the offer, neither falling within nor going beyond the terms proposed, but exactly meeting them at all points and closing with them just as they stand.

In the case of *Corcoran* v. *White* (1886), 117 Ill. 118, 7 N. E. 525, 57 Am. Rep. 858, it was held that to constitute a contract for the sale of land by the acceptance of an offer to sell, the acceptance must be unconditional, and that no contract will result from a letter in reply that the party will accept the offer, "provided the title is perfect," and that at any time before an unconditional acceptance of an offer and compliance with its terms it may be withdrawn.

In the case of *Eckert* v. *Schoch* (1893), 155 Pa. 530, 26 Atl. 654, the defendant wrote to the plaintiff as follows: " 'If you can pay 83½ on track here for prime Pa. wheat will send you sample.' " On the following day plaintiff replied by telegram: " 'Ship quick five cars prime red wheat to Stemton as trial lot.' " On the same day the plaintiff confirmed the purchase of five cars by letter. Defendant replied on the same day: " 'I send you sample of wheat. I will ship you one car soon and if satisfactory will

ship more. I ship this car at price named.' '' It was held in this case that the order of Eckert for the wheat was not an acceptance of any offer made by Schoch to sell; that it was a mere order for goods which Schoch might accept or refuse at his pleasure, and that without more there was no contract between them. It was further held, however, that the subsequent conduct and dealings of the parties showed an acceptance of the order.

In the case of *Gaus & Sons Mfg. Co.* v. *Chicago Lumber Co.* (1905), 115 Mo. App. 114, 92 S. W. 121, lumber was ordered, '' 'Sample cars to decide this order.' '' After certain of the cars first shipped had been rejected, defendant wrote plaintiff that it was out of the question for defendant to meet plaintiff's requirements, and therefore he thought it best to consider the order canceled, and requested plaintiff to supply their wants from some other source. It was held that such a letter amounted to a rescission of the contract. See, also, *Brophy* v. *Idaho Produce, etc., Co.* (1904), 31 Mont. 279, 78 Pac. 493; *Myers* v. *Trescott* (1891), 66 N. Y. (59 Hun) 395, 13 N. Y. Supp. 54; *Scott* v. *Davis* (1897), 141 Mo. 213, 42 S. W. 714.

In the instant case the appellee's proposal was to sell flour at $4.60, subject to wire acceptance, reaching appellee at once, and then only subject to a change in the market. The appellant did not unconditionally accept this conditional proposal, but accepted it, *"subject to our inspection and approval of baking sample to be forwarded at once by you."* The right was reserved by the appellant to accept or reject the appellee's proposal, according as it approved or disapproved the baking sample. Upon receipt of appellant's conditional order, the appellee

telegraphed appellant, "Market 3c higher at 10:30, sending sample, if on receipt satisfactory, will try and trade on market basis," at the same time sending a letter confirming the telegram in which the appellee stated in substance that, as the market was three cents higher, it could not confirm the price, but that appellee desired to do business with the appellant. After receipt of the baking sample, the appellants wired the appellee booking 600 barrels of flour, and requesting a confirmation of the order. This ended the correspondence as far as it concerned the contract.

An examination of this correspondence clearly discloses that the negotiations were not finished. Appellee's order of 600 barrels of flour, subject to inspection and approval of baking sample to be forwarded at once, was not an absolute and unconditional acceptance of the appellant's offer, and before appellee sent its last letter of acceptance, which, by the way, shows a variance as to the price, appellant had withdrawn its original offer, and then agreeing only that if the baking sample was satisfactory, it would try to trade on a market basis. There was no acceptance by either party, and, such being the case, there was no contract. It follows that the demurrer to the complaint was properly sustained.

The judgment is affirmed.