## Lloyd v. Midwest Fuel Company.

[No. 13,952. Filed February 3, 1932. Rehearing denied July 27, 1932. Transfer denied July 29, 1933.]

*B. F. Small, James H. Caldwell* and *Thomas F. O'Mara,* for appellant.

*Charles A. Crawford, Herman L. McCray, Edward J. Boleman, Burrell Wright,* and *Jacob S. White,* for appellee.

Wood, P. J.—Appellee brought suit in the court below against appellant on a complaint in three paragraphs. The first paragraph is on an account for money due and unpaid for coal sold and delivered to appellant at his special instance and request. The second paragraph is for money due and unpaid for coal sold and delivered to appellant under a written contract which is made an exhibit to this paragraph of complaint, calling for 6,500 tons of Old Hickory 2″ lump coal, to be delivered as ordered. The third paragraph is for money due and unpaid for coal sold and delivered to appellant under a written contract, which is made an exhibit to this paragraph of complaint, calling for 6,500 tons more or less Old Hickory 3x6 egg coal, to be delivered as ordered.

Appellant filed an answer in general denial to each paragraph of this complaint; to the first paragraph of complaint, he also filed a second, third and fourth paragraph of answer. The second paragraph alleged, in

substance, that on August 6, 1925, appellee and appellant entered into a parol contract, under the terms of which it was agreed that appellant should be appellee's exclusive agent in handling its coal in a certain prescribed territory, on prices to be quoted from time to time depending upon the fluctuations of the market; the prices to be quoted f. o. b. the mine; appellant to receive for his pay for acting as said agent the difference between the net price quoted to him by appellee and whatever price appellant might sell the coal for. That upon August 7, 1925, appellee wrote a letter confirming this conversation. This letter was made an exhibit to this paragraph of answer; it reads as follows:

"Referring to the writer's conversation with you yesterday. It is our desire that you sell our Old Hickory White Ash coal and that you shall be our Exclusive agents in handling this coal in Terre Haute and in the territory bounded as follows: On the north side by a straight line drawn due west into Illinois from a point ten miles west of LaFayette, Indiana. On the east by a straight line from the point ten miles west of LaFayette, due south to Bloomfield. On the south by a straight line due west into Illinois. These imaginary lines will extend into Illinois three counties.

"All orders taken by you will be forwarded to this office and we will name you prices on all sizes of coal from time to time according to the market fluctuations, you will be invoiced also by this office. Terms of payment will be as stated on our invoices except where there have been arangements made to cover special accounts.

"You will be protected on any quotations Hickory Grove Coal Mining Corporation has made prior to this date.

"We have given you the following quotations for August Shipment:

     Mine Run ......................................$1.60

     2″ Lp............................................. 1.80

     2x4 Egg ...................................... 1.80

"We have named you a price of $1.30 on our 2″ screenings for shipment up to and including August 12th. These prices F. O. B. Riley.

"The Belt Railroad notified us today that they had stopped loading storage coal and would want shipments from the mine next week. On account of this we will not be in position to give you more than 1,500 tons for shipment this month.

"Hoping that the above arrangements will be satisfactory to you, we remain."

That appellant under and by virtue of the terms of said contract had the exclusive right to make sales of all coal from appellee's mines, within the territory described in the letter; that notwithstanding this fact and in violation of the contract appellee made sales of coal within this territory, especially to the Big Four railroad company, on which appellee was owing appellant commissions which were due and unpaid. This paragraph of answer is referred to in the pleadings and briefs as an answer, cross-complaint, and counterclaim. It closes with a prayer asking that in the event judgment be awarded appellee in any amount on its first paragraph of complaint; that any judgment awarded appellant on this counterclaim be set off against appellee's judgment, and for a judgment over against appellee for any excess found due appellant. The third and fourth paragraphs of answer to the first paragraph of complaint pleaded payment.

To the second paragraph of complaint appellant also filed a second, third, fourth and fifth paragraph of answer. While the second and third paragraph of

pleading are designated therein as answers, they both close with a prayer designating them as counterclaims, and asking for affirmative relief. The second paragraph alleges in substance, that on or about July 10, 1926, appellant notified appellee that he was bidding on contracts for coal for a number of large buildings in the city of Terre Haute, and asked for quotations; that prices were quoted orally, which were afterwards confirmed in a letter dated July 19, 1926; that pursuant to said oral agreement and the memorandum thereof appellant submitted bids for furnishing said coal and was successful; that appellant thereafter proceeded to furnish the coal and up to October 10, 1926, had furnished 650 tons of coal to said buildings, here we quote "under said oral agreement with this plaintiff mentioned in Defendant's Exhibit A." (Defendant's Exhibit A was the letter written by appellee to appellant quoting prices on which he based his bid for the contracts to furnish coal for the buildings). Continuing, appellant alleges in substance, that on or about October 10, 1926, he and appellee signed a written memorandum, embracing a part of the oral agreement for the furnishing of coal to appellant on his building contracts for which he was the successful bidder; that neither appellee nor appellant, at any time after entering into said written contract, ever made any attempt to comply with its terms, and said contract was completely abandoned. That at the time that the oral agreement was entered into nothing was said about the terms of payment for the coal; that no definite time for payment was fixed; that it had been the custom for appellant to pay appellee whenever it needed money, and sent statements to appellant; that this plan of payment was followed until October 23, 1926, when appellee notified appellant that different arrangements would have to be made about payments; that it was then

agreed orally that the defendant should pay between the 10th and 15th of each month for approximately one-half of the coal shipped the previous month and between the 25th and 30th of the month for the remainder of the coal shipped the previous month; that thereafter on January 11, 1927, the appellee, without cause, canceled and broke all his contracts with appellant and refused to furnish him any more coal; that in order to carry out his contract to furnish coal to various buildings, appellant was compelled to purchase coal from other dealers at prices higher than those quoted by appellee, causing him damage; that on January 6, 1927, appellant was entitled to a credit memorandum from appellee for $684.40, and demanded that same be applied on his account; that on January 10, 1927, appellant mailed a check to appellee for the sum of $3,500.00, which check was dated January 15, 1927; that if said check and credit memorandum had been applied on said account on January 15, 1927, it would have paid approximately one-half the amount due appellee for coal shipped during the month of December, 1926. This paragraph of answer closes with a prayer that appellant be allowed damages alleged to have been sustained because of the wrongful cancellation of this contract by appellee, and for a set-off against any amount found due from appellant to appellee on its second paragraph of complaint. The theory of this paragraph of answer, as we interpret it, is abandonment.

The third paragraph alleges in substance, the business relations that had existed between the parties for some time; that there had never been any written contracts between them relative to the purchase or sale of coal; that it had been the custom of appellant to order such coal as he desired for any purpose and that appellee would ship it to him; that whenever appellee desired payment therefor it would send appellant a statement;

that this custom had been followed for a long period of time; that on or about October 10, 1926, appellee and appellant signed the written memorandum set out as Exhibit B of appellee's second paragraph of complaint, of a part of an agreement between the parties relative to the shipment of coal mentioned in said memorandum; that it provided that upon the 10th of each month, appellant should pay for all the coal shipped the previous month; that such condition had never been in the oral contract prior to the time of executing said written memorandum; that said memorandum was never in force between the parties and that they continued to deal with each other exactly as they did before signing the written memorandum; that the appellee subsequent to the execution of the memorandum never enforced the same, and thus lead appellant to believe that its terms were not vital as to payment, and would not be enforced; that appellant, relying upon the representations of appellee, made no effort to pay his indebtedness to appellee according to the terms of the memorandum; that he was misled by appellee's conduct and that it was estopped to enforce the terms of the memorandum; that by enforcing it and refusing to longer furnish coal to appellant, he had suffered damages. This paragraph of answer closes with a prayer very similar to the one in the second paragraph of answer. The theory of this paragraph as we interpret it is estoppel.

The fourth and fifth paragraph of answer pleaded payment.

To the third paragraph of complaint appellant filed an additional second, third, fourth and fifth paragraph of answer, each of which contains similar allegations and theories as the same paragraphs of answer to the second paragraph of complaint, except that they relate to a contract of appellee to sell coal to appellant, to enable him to fulfill a contract which he had with the

school city of Terre Haute to furnish it coal. For that reason it is not necessary to set out these answers or their substance. The fourth and fifth paragraphs of answer pleaded payment. To all these affirmative answers appellee filed a reply in general denial.

Upon these issues the cause was submitted to the court for trial without a jury. The court found for the appellee upon each paragraph of complaint and entered judgment in accordance with the finding. Appellant filed a motion for a new trial which was overruled. He has appealed to this court assigning as error the overruling of his motion for a new trial. In this motion appellant assigned sixty-nine causes. The only causes for a new trial discussed by appellant in his brief are: (1) the decision of the court is contrary to law; (2) the decision of the court is not sustained by sufficient evidence; (3) error in the assessment of recovery in that it is too large.

The first proposition urged by appellant for a reversal of this cause is, that the letter written by appellee to appellant on August 7, 1925, confirming a conversation had the previous day between the parties, was and constituted a full and complete written contract; that all prior negotiations were merged therein; that it could not be varied, added to or limited by parol testimony; that pursuant to its terms appellant was constituted appellee's exclusive agent within the territory defined; that appellee did not reserve the right to sell any coal within this territory; that the sale of coal to the Big Four Railroad Company and other consumers within such territory was an infringement on his agency contract and therefore the trial court committed error when it found against him on his second paragraph of answer to the first paragraph of complaint.

The principle of law which the appellant seeks to in-

voke is correct, but it does not apply to the facts in this case. The letter on which appellant bases his right to recover does not embrace a complete contract. Some of the essential elements to make it a full and complete contract are wanting, among them the following may be suggested; it does not state the date upon which the contract of agency shall begin or when it shall terminate; there is nothing said about the amount of compensation to be received by appellant, the method of determining the same, how, or in what manner it is to be paid; there is nothing said about the quantity, quality or character of coal to be sold, except that it shall come from a certain mine; there is nothing said about when the same shall be delivered, in fact appellant would be compelled to resort to parol evidence to show an acceptance of the contract on his part. In as much as it is very apparent that parol evidence would have to be employed in order to explain and complete the terms of the contract it will be treated as a parol contract. *Stagg* v. *Compton* (1881), 81 Ind. 171; *Louisville, etc., Railway Co.* v. *Reynolds* (1889), 118 Ind. 170, 20 N. E. 711; *Goldberger* v. *Arcadian, etc., Springs Co.* (1916), 61 Ind. App. 1, 111 N. E. 316; *Roder* v. *Niles* (1916), 61 Ind. App. 4, 111 N. E. 340; *Corydon Milling Co. v. Noblesville Milling Co.* (1918), 69 Ind. App. 491, 122 N. E. 362.

It is well settled by the authorities, that the courts, in determining the construction and meaning to be placed on contracts, may look to the interpretation of its terms as evidenced by the conduct and action of the parties themselves, and this will have a great, if not a controlling influence in many instances. It is admitted by both parties to this cause, that from August 12, 1925, to January 11, 1927, when business relations between them were terminated, that

the appellee sold and delivered an immense amount of coal to the Big Four Railroad Company at Terre Haute, these deliveries being made in conformity to a contract which had been in existence between the Railroad Company and appellee for some period of time previous to August, 1925. Appellant never made any complaint during the entire time that these deliveries were being made, and never demanded any accounting from appellee for commissions, profits or compensation of any kind for the coal thus sold and delivered until after January 11, 1927, when appellee refused to ship any more coal to appellant. From this state of the record, the action of the trial court was justified. In the case of *Louisville, etc., Railway Co.* v. *Reynolds, supra,* Justice Elliott, in applying this rule of law to a state of facts quite similar to the facts in this case, expressed himself in this terse language: "We do not, however, 'stick in the bark' by a strict adherence to words; for we look to the whole contract as construed by the acts of the parties under it, and this gives us a substantial foundation, as it is a settled and salutary principle that courts will follow the construction that the parties themselves, by their acts, have put upon their own contracts."

Appellant complains of the finding of the court in favor of appellee on its second and third paragraphs of complaint, and against the appellant on his second and third paragraphs of answer to each of these paragraphs of complaint. As heretofore suggested, these paragraphs of answer were upon the theory of abandonment and estoppel, and asked for affirmative relief. The burden was upon appellant to prove the various allegations contained in each of these answers. This court will not weigh the evidence. An examination of the evidence discloses that it was ample to sustain the finding of the court on these issues.

Complaint is also made of the amount of recovery. This is supported by sufficient evidence.

Finding no error the judgment is affirmed.